NEW CORONADO COAL COMPANY v. JASPER.

Opinion delivered May 10, 1920.

1. REMOVAL OF CAUSES—JOINT LIABILITY.—Material allegations of a complaint charging joint liability against a resident and a nonresident defendant must be traversed in a petition for removal to the Federal court by a statement of facts conclusively showing that the plaintiff fraudulently joined the defendants in the suit to deprive the nonresident defendant of his right to a trial of the cause in the Federal court, and such petition should preclude every theory of joint liability.

2. REMOVAL OF CAUSES—SUFFICIENCY OF PETITION FOR REMOVAL.—In an action against resident and nonresident defendants to recover damages for conversion of coal, a petition for removal of the cause to the Federal court which failed to traverse material allegations of the complaint as to the joint liability of the defendants was insufficient.

3. MINES AND MINERALS—WRONGFUL MINING OF COAL.—In an action against several defendants for conversion of coal, evidence held to sustain a finding that the acts of the defendants in taking coal from plaintiff's mine were wilful, wanton and malicious.

4. EVIDENCE—RECORD IN ANOTHER SUIT.—In an action against several defendants for wrongful taking of coal and wrongful pulling of pillars in a mine, it was not error to permit the complaint and proceedings in a prior suit to be read for the purpose of showing that defendants' foreman knew the location of the dividing line between plaintiff's and defendants' mines at the time the pillars were pulled; such foreman having testified to the nature of the former suit, thereby showing a knowledge of the contents of the complaint.

5. PARTNERSHIP—EFFECT OF JUDGMENT AGAINST.—Where two members composing a partnership are sued, but service is only upon one of them, a judgment against the partnership binds the latter personally, and also the partnership funds impounded by attachment or garnishment.

6. APPEAL AND ERROR — HARMLESS ERROR.—A judgment against a partnership by its firm name, when only one of the two partners was served, was not prejudicial to the partner who was served.

7. TRIAL — AMBIGUOUS INSTRUCTION — SPECIFIC OBJECTION.—Specific objection should be taken to an ambiguous instruction.

8. MINES AND MINERALS—LOSS OF PROFITS AS DAMAGES.—Where an adjoining owner wrongfully pulled the pillars in plaintiff's mine causing a squeeze and rendering it impossible for plaintiff to mine coal which he had contracted to sell, it was proper to charge that the measure of damages was the profit which plain-

tiff would have netted on the unrecoverable coal; such profits being ascertainable with reasonable certainty.

9. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE.—It was no abuse of discretion to refuse a new trial for newly discovered evidence where one of the defendants prior to the trial knew of the witness by whom the evidence was to be shown and that he might testify favorably for defendants.

Appeal from Sebastian Circuit Court, Greenwood District; *Paul Little,* Judge; affirmed.

*Warner, Hardin & Warner,* for appellants.

1. It was error to overrule the petition for removal filed by defendant Malone to the Federal court. The petition was properly verified and a bond in proper form offered. 50 Ark. 388; 75 *Id.* 116; 87 *Id.* 136; 29 U. S. (Law. Ed.) 962; 33 *Id.* 144; 51 *Id.* 430; 30 Okla. 235; 122 U. S. 514; 108 *Id.* 561; 111 *Id.* 358; 130 *Id.* 230.

2. The testimony is insufficient to sustain the finding that the defendants mined, or caused to be mined, the pillars of coal in the plaintiff's mine. The burden of proof was on the plaintiff. 92 Ark. 297; 84 Atl. 9; 173 Mass. 45; 54 S. E. 287; 52 Atl. 349; 56 S. E. 695; 38 Cyc. 1121; 93 Ark. 397.

3. There was no wanton, wilful and malicious conversion of coal by the defendants. Plaintiff was entitled only to a judgment equivalent to the royalty on the coal mined in its natural state on the ground. 123 Ark. 127; 65 *Id.* 448; 122 *Id.* 341.

4. The court erred in giving plaintiff's instruction No. 1. 30 Cyc. 556; 20 R. C. L. 936. As a whole the instruction is ambiguous and confusing.

5. The court erred in giving instruction No. 2 for plaintiff. 74 Ark. 19; 69 *Id.* 380; 71 *Id.* 518.

6. It was error to allow the complaint and summons to be read in evidence. 1 Enc. of Ev. 426; 102 Ark. 640. The evidence of the deputy sheriff was also improperly admitted. It was incompetent.

7. The motion for new trial should have been granted because of the newly discovered evidence.

There was an abuse of the discretion of the court. 41 Ark. 229; 107 *Id.* 498.

*Covington & Grant,* for appellee.

1.   The evidence warranted the verdict.

2.   The law is well settled. The jury found that appellants had wilfully committed the unlawful acts complained of and their finding is conclusive. Appellants took the coal intentionally and with a reckless disregard of the rights of appellee, and they must respond in damages for the full value of the property unlawfully converted without deduction for labor or expenses incurred in removing or preparing it for market. If they took it unintentionally or in the honest belief that they had a lawful right to it, they are liable for the value of the coal in the ground. 173 Fed. 340; 87 Ark. 80; 69 *Id.* 302; 65 *Id.* 448. The case in 92 Ark. 297 is not applicable to the facts here, nor is 123 *Id.* 127.

3.   There is no error in the instructions given. Appellants and did not move to make McKoin a defendant, and it too late to complain now. 66 Ark. 560; 215 S. W. 694; 8 R. C. L. 508; 17 C. J. 785; 103 Ark. 588.

4.   There was no error in admitting the testimony offered for plaintiff. 102 Ark. 640 does not sustain their contention.

5.   The motion for new trial for newly discovered evidence was properly overruled. It was not sufficient.

HUMPHREYS, J.   Appellee, John W. Jasper, instituted this suit against appellants, Arkoal Mining Company, a corporation, C. A. Beggs, B. J. Malone, Minnie Malone, M. A. Malone, A. M. Malone, and the New Coronado Coal Company, a partnership, alleged to have been composed of the five last named parties, in the Sebastian Circuit Court, Greenwood District, to recover damages in the sum of $55,681.50, on account of (1) wanton, wilful and malicious conversion of 2,820 tons of coal out of Central Mine No. 5, on the southeast quarter of the southeast quarter, section 21, township 5 north, range 31 west, in said county, and (2) the wanton, wilful and malicious

pulling of pillars in said mine, causing the roof to fall or squeeze down, thereby preventing appellee from mining 16,410 tons of solid coal and 10,000 tons of pillar coal.

The complaint contained an allegation, among others, that the appellants owned and operated a mine known as the "Phoenix property" just south of "Central No. 5 property" aforesaid; that B. J. Malone was general superintendent and C. A. Beggs mine foreman of the New Coronado Coal Company, and the members of said partnership operating the "Phoenix property;" that B. J. Malone, as such general superintendent, wrongfully directed the other employees of said company, as well as the mine foreman; and that C. A. Beggs, as such mine foreman, wrongfully directed the other employees to make openings from the land and coal in the Phoenix property into and through the land and coal of Central No. 5 property, and, pursuant to said unlawful, wilful and wanton directions, did wrongfully take 2,820 tons of coal and cause the roof to cave in so as to prevent appellee from mining 16,410 tons of solid coal and 10,000 tons of pillar coal.

A. M. Malone filed a petition and bond for removal of the cause to the United States District Court for the Western District of Arkansas, setting up that the controversy involved issues between himself and appellee alone, in which appellee claimed damages against him in the sum of $55,681.50, on account of an alleged wrongful act of removing and mining coal underneath land held by appellee under lease; that he was a nonresident and appellee a resident of the State of Arkansas; that the only residents of the State made defendants in appellee's suit were C. A. Beggs, B. J. Malone and Minnie Malone, who had no interest whatever in the issues involved in the litigation; that they were joined as defendants in appellee's suit for the fraudulent purpose and with the fraudulent intent to prevent a removal of the cause from the State to the Federal court; that the mining operations of the "Phoenix property" were under his immediate direc-

tion; and that C. A. Beggs, B. J. Malone and Minnie Malone were in the employ of petitioner and his partner, C. M. McKoin, and that neither of said parties was charged with the duty of directing or superintending the mining operations of the petitioner and C. M. McKoin aforesaid; that none of the alleged wrongful acts set forth in the complaint were done by either C. A. Beggs, B. J. Malone or Minnie Malone, or with their knowledge or under their directions.

The petition to transfer the cause was overruled by the court, to which ruling, appellants objected and excepted.

Thereupon, A. M. Malone filed a separate answer, in which he admitted that the New Coronado Coal Company was composed of C. M. McKoin and himself, and that they mined 1,497 tons of coal out of a solid body in "Central No. 5 property," but charged that they did so in good faith, under an agreement which they believed gave them the right to do; that he was willing to pay a reasonable royalty for the coal so mined; and in which he specifically denied all other material allegations of the complaint.

C. A. Beggs, B. J. Malone and Minnie Malone filed separate answers, in which each specifically denied all the material allegations in the complaint.

The Arkoal Mining Company and M. A. Malone were not served and did not appear, and C. M. McKoin was not made a party and did not appear.

The proceeding was by attachment and garnishment. In response to the writs of garnishment, the McAlister Fuel Company admitted an indebtednes of $4,899.92 to the New Coronado Coal Company, and paid the amount into court; and the Merchants National Bank of Fort Smith admitted an indebtedness of $3,165.30 to the New Coronado Coal Company and $142.60 to A. M. Malone, personally, and gave bond to pay same into court; and the Huntington State Bank admitted an indebtedness to C. A. Beggs of $142.60 and paid it into court.

The cause was submitted to a jury upon the pleadings, evidence and instructions of the court, which re-

sulted in a verdict and judgment in favor of appellee for $11,000.35 against the New Coronado Coal Company, a partnership composed of A. M. Malone and C. M. Mc-Koin, and against A. M. Malone and C. A. Beggs, upon the theory that said parties had wrongfully converted 1,497 tons of coal belonging to appellee, of the value of $3,068.85, at the rate of $2.05 per ton, the price for which appellee had contracted to sell it on board cars; and for $7,931.15, lost profits on 26,413 tons of coal rendered unrecoverable by wrongfully pulling pillars in "Central No. 5 property," thereby causing the roof to cave in or squeeze down and obstruct the opening to the coal. The garnishments were all sustained, the money, deposited in the court in response to the writs, was ordered paid to appellee, and judgment rendered in his favor against the garnishee and its bondsman which had not paid the fund into court. From the judgment, an appeal has been prosecuted under proper proceedings to this court.

The record is too voluminous to incorporate a summary of the evidence of each witness in this opinion, and, for that reason, we can only make a general statement. Certain defendants were dropped from the suit for want of service and other causes, so the suit is one by appellee against C. A. Beggs, A. M. Malone and the New Coronado Coal Company, composed of A. M. Malone and C. M. McKoin. In the fall of 1917, appellee purchased a tract of land called "Mottu property," west of "Central No. 5 property," which is a coal mine on the land heretofore described. On January 8, 1918, he leased "Central No. 5 property" for a term of two years for mining purposes, agreeing to sell the output of the mine for $2.05 per ton, on board cars, to the owners of the property. Prior to the purchase of the "Mottu property" and the lease of "Central No. 5 property," appellee, in connection with L. E. Lake, under the corporate name of "Phoenix Coal and Mining Company" for a number of years operated the coal mine known as the "Coronado property" under lease. On July 20, 1917, the Phoenix Coal

& Mining Company was ousted and the land sold and afterward conveyed to the Arkoal Mining Company, a nonresident corporation. A. M. Malone and C. M. Mc-Koin leased it as partners under the partnership name of New Coronado Coal Company. The New Coronado Coal Company began to operate the mine in October, 1917. B. J. Malone was employed as general superintendent and directed the work on top of the ground. C. A. Beggs was employed as foreman and had direction of the work under ground. Between October, 1917, and June, 1918, the New Coronado Coal Company, by direction of A. M. Malone, under the supervision of the company's foreman, C. A. Beggs, crossed over the north line of the "Coronado property" on to "Central No. 5 property," mined and hauled out of the solid body of coal thereon 1,497 tons, taking it to the surface through the "Coronado property." After having mined that amount, the owner, Central Coal & Coke Company, enjoined appellants in the courts from mining more. Appellants' testimony tended to show that they mined the coal in good faith, believing appellee had surrendered his lease on the particular land from which the coal was taken, and that they had made an arrangement for exchange of coal by which they would acquire the title to the coal so mined.

Appellee's testimony tended to show that he declined to surrender his lease, and, in the face of his refusal and with full knowledge of his rights, appellants mined the coal.

Upon the damage issue growing out of the alleged pulling of the supporting pillars between the "Coronado property" and "Central No. 5 property," appellants' witnesses, to the number of eight or nine, testified that the pillars in question were pulled by appellee in the spring of 1917, while operating the "Coronado property" in the corporate name of "Phoenix Coal Company;" that the caving of the roof occurred while witnesses were in the employ of the Phoenix Coal Company,

and not after the New Coronado Company began to operate the mine; that the condition of the roof in "Central No. 5 property" at the time they testified was the same as when they pulled the pillars in the spring of 1917.

Appellee's witnesses testified that the squeeze, which obstructed the entry or slope and covered the track from the "Mottu" mine into and through "Central No. 5 property" along the south side thereof to the body of coal on the east end, was caused by the pulling of the pillars in the spring of 1918, along the line between the two latter properties; that they did not pull them; that early in the month of July, 1917, and later in the month when the Phoenix Coal Company was ejected from the "Coronado property," the pillars were intact and had been standing for ten or twelve years.

Appellants' motion for new trial contained a request for new trial on account of newly discovered evidence of L. E. Lake. The evidence set out in the motion, to which Lake would subscribe, if present, was that he had personal charge of the mining operation of the Phoenix Coal & Mining Company in "Central No. 5 property" prior to and up to May 1, 1917, and that in April of that year the pillars in question were pulled under the supervision of Bert Agnew at his direction; that appellants had no knowledge or means of knowing, and, after making diligent inquiry, did not learn of the facts to which Lake would testify or that he resided in Newton County until after the trial. The motion for new trial was denied over the objection and exception of appellants.

It is first contended that the court committed reversible error in overruling the petition to remove the cause to the Federal court. The sole guide for a proper determination of this question must be found in the allegations of the complaint and petition for removal. The material allegations of the complaint, charging joint liability against resident and nonresident defendants, must be traversed in the petition of removal by a statement of facts conclusively showing that the plaintiff fraudulently

joined the defendants in the suit to deprive the nonresident defendant of his right to a trial of the cause in the Federal court.  *C., R. I. & P. Ry. Co.* v. *Schwyhart,* 227 U. S. 184.  We do not think the charge in the complaint that C. A. Malone individually, and as a partner in the New Coronado Coal Company, became a joint tort feasor with B. J. Malone and C. A. Beggs on account of their acts, respectively, as general superintendent and mine foreman, in ordering their employees to mine coal and pull pillars in appellants' mine, was sufficiently traversed. It is true A. M. Malone in the petition attempts to controvert joint liability by alleging that the wrongful acts charged "were not done or suffered to be done by either the said Beggs, B. J. Malone or Minnie Malone, nor were they done with their knowledge or under their directions, and that they are in no way responsible for the alleged damages." In other words, it is charged in the petition for transfer that A. M. Malone himself directed the employees, including Beggs and B. J. Malone. It is not denied in the petition to transfer that B. J. Malone was superintendent and C. A. Beggs mine foreman of the New Coronado Coal Company, composed of A. M. Malone and C. M. McKoin. Without such denial, the traverse was insufficient because A. M. Malone, individually and as a partner, would be liable jointly with either or both for acts done by them within the scope, or apparent scope, of their authority. In order to effect the transfer of the cause, the petition of removal should have precluded every theory of joint liability of the resident and nonresident defendants. There was no error in overruling the petition to transfer.

It is next insisted that the evidence is insufficient to support the verdict (1) because there is no evidence to show appellants pulled the pillars, which produced the squeeze that obstructed appellee's passageway to his coal in "Central No. 5 property." Appellee testified that in April, 1918, he laid a track from the "Mottu property" on the west in an easterly direction through the old workings

in "Central No. 5 property" to a solid block of coal on the east side thereof for the purpose of mining it; that the New Coronado Coal Company was at the time working in the "Coronado property" immediately south of No. 5, aforesaid; that the pillars were standing when he built his track; that he did not pull them; that they were pulled, which caused the roof of "No. 5" to cave in, cover his track and obstruct his passageway to the solid body of coal on the east. Marvin Repass testified that he helped appellee lay the track; that it was 800 or 900 feet long; that the squeeze, which covered it up and shut appellee out from the solid body of coal, came after the track had been laid and the caving of the roof came from the direction where the New Coronado Coal & Mining Company, or Malones, were mining; that none of the pillars were pulled by appellee or his employee.

The two mine inspectors, Boyd and Shaw, testified that the pillars along the line between the two properties were standing in the spring of 1917, Boyd saying they were standing as late as July 7, 1917.

It is impossible to read the evidence without concluding that either appellants or appellee pulled the pillars in question. The evidence just detailed was substantial testimony from which the jury were warranted in concluding that appellants pulled the pillars, which caused the squeeze that cut appellee off from his coal and was sufficient in this particular to support the verdict. (2) Because there is no evidence to show a wrongful conversion of the coal taken or a wrongful pulling of the pillars. The testimony offered by appellee, with reference to the conversion of 1,497 tons of coal, tended to show that it was converted after several futile attempts to get appellee to surrender his rights thereto under lease from the owners of "Central No. 5 property," and that appellants continued the trespass until restrained by court order; and that offered, with reference to wantonly pulling the pillars, that they were pulled with knowledge as to the location of the line between the two properties and that

the effect of pulling them would be to destroy appellee's entry, cover up his track of 800 or 900 feet, over which he was hauling coal from the east end of his mine, and to permanently cut him off from it and the pillar coal in the mine.   This evidence was sufficient upon which to base an inference that the acts were wanton, wilful, malicious ones, and therefore enough legal, substantial evidence to support the verdict in this regard.

It is next insisted that the court erred in permitting the complaint and other proceedings to be read to the jury in a suit filed November 17, 1917, by the Central Coal & Coke Company against C. A. Beggs and others, to prevent them from taking coal off of the tract of land in question.   This evidence was offered and admitted by the court for the sole purpose of showing that C. A. Beggs, foreman of the New Coronado Coal & Mining Company, knew the location of the dividing line between "Central No. 5 property" and the "Coronado property," at the time the pillars in said No. 5 were pulled.   C. A. Beggs testified to the nature of the injunction suit and disposition made of it, thereby showing a knowledge of the contents of the complaint.   We think the complaint and proceeding admissible for the purpose offered.

It is next insisted that the court erred in giving appellee's instruction No. 1 (1) because the jury was directed to find against the New Coronado Coal Company for 1,497 tons of coal.   This was the coal A. M. Malone and C. A. Beggs admitted taking from "Central No. 5 property" for the partnership and for which they offered to pay a reasonable royalty.   The contention is made that the instruction is in conflict with the rule of law that a partnership can not be sued as an entity and judgment rendered against it as such.   The suit was not against the partnership as a legal entity, nor was judgment rendered against it as such.   The suit was against the New Coronado Coal Company, a partnership composed of A. M. Malone and C. M. McKoin.   Judgment was rendered against it as an association of persons.   There being no

personal service on C. M. McKoin, the other partner, the effect of the suit and judgment was to bind A. M. Malone personally and as a partner, as well as the partnership fund impounded by attachment and garnishment. We are unable to see how any prejudice resulted to A. M. Malone, the only partner served, by the direction given to the jury of which complaint is made. (2) Because the instruction assumed without justification that there was testimony from which the jury could find that C. A. Beggs directed the employees of the partnership and of A. M. Malone to remove the pillars from appellee's mine. We do not think the instruction assumed that there were separate employees of Malone and the partnership and that C. A. Beggs directed all of them to do the wrongful act. The instruction in effect told the jury that A. M. Malone was liable individually and as a partner if the foreman wrongfully directed the employees, meaning one set of employees, to pull the pillars which caused the roof in said mine No. 5 to fall. If there was any doubt as to whether the court meant one or two sets of employees, appellants should have made a specific objection challenging the instruction on account of ambiguity. (3) Because the instruction was misleading in that it was impossible for the jury to determine from the wording which Malone was the servant and which the master. The failure to insert the initials "B. J." before Malone could not have misled the jury. The undisputed evidence showed that B. J. Malone was the superintendent or employee, and by another instruction he was exempted from liability, so there could not have been a misunderstanding that A. M. Malone was intended by the use of the word "master" in the instruction. (4) Because there was no evidence to warrant the submission of the issues as to whether appellants wrongfully removed the pillars in question. We ruled otherwise in the discussion of the question whether there was sufficient legal evidence to support the verdict. (5) Because the instruction permitted a recovery for coal wrongfully converted at its

reasonable value at the mouth of the shaft without deducting 25 cents per ton provided for in his contract of sale thereof to the Central Coal & Coke Company. The deduction provided for was a means adopted by appellee to pay an indebtedness of $1,139.03 he owed the Central Company on a past transaction, so it would have been improper to deduct this amount from the damages assessed against appellants for wilful conversion.

It is also insisted that the court erred in giving appellee's instruction No. 2, by charging therein that the measure of damages was the profit that appellee would have netted on the unrecoverable coal lost by the wrongful removal of the pillars. The contention is made that the correct rule for the measure of damages was the value of the leasehold estate, if destroyed by a wanton act of appellants, and not the profit which appellee might have made. It seems allowable as a general rule to award profits as damages resulting from tortious acts, if ascertainable with reasonable certainty. 8 R. C. L. 508; 17 C. J., p. 785. In the instant case, the proof showed that appellee lost 27,800 tons of coal, 1,389 tons more than he claimed, on account of the squeeze, which the jury found was occasioned by appellants' wanton act of pulling the pillars in "Central No. 5 property," which was contracted to be sold at $2.05 per ton on board cars, with expense of $1.70 per ton for mining and placing same on top at pit mouth; that the entire amount, with reasonable effort, could have been mined before the expiration of appellee's lease. Appellee's net profit would have been 35 cents on each ton claimed, or a total of $9,244.55, if placing the coal on top at pit mouth meant on board cars at pit, and there is nothing to show to the contrary. The jury awarded a much less amount as damages. The damages allowed were reasonably well established by the evidence.

Lastly, it is contended that the court erred in not granting a new trial on account of the newly discovered evidence of L. E. Lake, who was a stockholder and man-

ager of the Phoenix Coal & Mining Company in 1917, when, according to appellants' contention, the pillars were pulled and roof caused to fall by said company. C. A. Beggs, one of the appellants, must have been cognizant of Lake's interest in and management of the Phoenix Company, as he worked for the company as foreman for a long time and during the spring of 1917. Lake was not far away. No effort was made to get him or his evidence before the trial. The only excuse offered is that appellants had no idea what Lake would testify to until after the trial. Beggs' former connection with the company ought to have suggested that Lake, the former manager, could testify favorably for them. Sufficient diligence was not shown before the trial, and it can not be said the court abused its discretion in refusing the motion for a new trial on account of newly discovered evidence.

No error appearing, the judgment is affirmed.