CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* McKAMY.

Opinion delivered February 10, 1930.

*H. T. Harrison* and *Thos. S. Buzbee,* for appellant.
*Golden Blount* and *Tom W. Campbell,* for appellee.

HUMPHREYS, J. This is an appeal from a judgment rendered in the circuit court of White County against

appellant for injuries received by appellee at the public crossing where the highway crosses appellant's railroad track near Protho's gin in Pulaski County, in a collision between appellant's freight train and appellee's motor truck between 10:00 and 11:00 o'clock on the night of May 8, 1928.

Appellee joined the engineer, E. G. Medlock, operating the locomotive at the time of the collision, with the appellant as co-defendant, alleging their concurrent negligence as grounds for a recovery against both. The allegations of concurrent negligence are contained in paragraph (c) of the complaint, which is as follows:

"The said defendants, and each of them, then and there neglected and wholly failed to ring the bell or sound the whistle of the engine of said train at all, as the said train approached said crossing, or to give any signal whatever to warn persons of the approach of said train, although said crossing was upon one of the most constantly used highways in the State, and many people were then and there almost constantly coming and going along said highway and over said crossing, which fact was known by said defendants; the said defendants therefore failed to exercise ordinary care for the safety of persons then and there about to cross over said crossing, in violation of the duties imposed upon said defendants by law, but carelessly and negligently ran said train over said crossing, and struck the plaintiff and truck in which he was then and there riding, causing the plaintiff's injuries as aforesaid, and said defendants then and there knew that plaintiff was approaching said crossing in his said truck, and said defendants then and there knew, because of the darkness of the night, and because of the fact that no bell had been rung or was being rung and no whistle had been sounded or was being sounded upon the engine of said train, and the headlight on said engine was so defective, that it could not be seen at a safe distance by travelers upon said highway,

that the plaintiff did not know said train was approaching said crossing, yet, with full knowledge of the plaintiff's said peril, said defendants then and there negligently, wilfully and maliciously ran said train over said crossing, and struck the plaintiff and his said truck, and injured him as aforesaid."

Appellant filed a petition in apt time to remove the cause to the United States District Court, in due form and accompanied by proper bond, which contained, in addition to an allegation of diversity of citizenship, the following averment:

"That it is alleged in paragraph (c) of the complaint that E. G. Medlock, an engineer on a train of the defendant, which it is alleged struck a truck driven by the plaintiff; knew that the plaintiff was approaching the crossing at which said alleged collision took place. Petitioner alleges as a fact that at the time of said alleged collision the defendant E. G. Medlock, as engineer of said train, had passed said crossing, was several hundred yards therefrom, and could not have known that plaintiff was approaching said crossing, and that these facts were known to the plaintiff at the time the complaint herein was prepared and filed, and said allegations were made by plaintiff fraudulently, and for the sole purpose of preventing a removal of this cause to the United States District Court."

The trial court refused to transfer the cause to the United States District Court, over appellant's objection and exception, although the request to transfer was renewed after all the evidence had been introduced.

The record reflects, in substance, the following facts:

Appellee, with two guests, A. R. Brewer and Opal Padgett, was driving his truck from Beebe to Little Rock, and, after crossing the Iron Mountain Railroad, all of them began and continued to listen in both directions for a whistle or bell as they approached the crossing near Protho's gin, and, hearing none, continued to

travel, still listening, at the rate of twenty-five or thirty miles an hour until within about one hundred feet (estimated) of said crossing, when they observed appellant's through freight near to or on said crossing running east towards Memphis. The train was running about thirty-five miles an hour. Although looking, they had been unable to see any headlight on the train. Immediately upon the discovery of the train on or near the crossing appellee applied the foot and emergency brakes, which were in good repair, turned off the switch, and put the engine in gear, but, failing to stop the truck in time to prevent a collision, turned it to the right in an effort to do so, and ran into either the corner of the first box car or the twentieth box car in the rear of the locomotive. The three occupants of the truck testified that the corner of the first box car behind the engine struck the automobile, and Opal Padgett, who recovered consciousness immediately, testified that other box cars bumped against the truck as they passed along. One of appellant's employees found the radiator of the truck hung onto the corner of the twentieth box car following the locomotive, when he inspected the train after same reached Carlisle. Appellee met two automobiles just before he discovered the train, which had passed over the crossing in front of said train. Ben Hodges, in company with Lon Etson, was driving the second car which appellee met just before he discovered the train near or on the crossing. They both testified that, as they approached the crossing near Protho's gin, they were listening and watching in both directions for a train, and did not hear any bell or whistle, and did not see the headlight of the train, although there was nothing between them and the train to prevent them hearing, or to obstruct their view. They also testified that, after meeting and passing appellee, they heard a noise, and looked back, and saw a train moving over the crossing, but heard no bell or whistle. Appellee further testified that he thought, at the rate of speed he

was traveling, that he could stop his truck within a space of about thirty-two feet by applying his brakes, but that he might not be able to do so on a concrete road. The highway at this point had a concrete surface.

The employees operating the train testified that the headlight was in good repair, shining brightly, and that they were sounding the whistle and ringing the bell continuously, for a distance of eighty rods before reaching the crossing near Protho's gin.

Appellant first contends for a reversal of the judgment because the trial court refused to grant its petition for the removal of the cause to the United States District Court. It is argued that paragraph (c) of the complaint failed to state a joint cause of action against appellant and E. G. Medlock, and that its petition for a removal to the United States District Court contained a statement of facts showing that the joinder of E. G. Medlock with appellant was a fraudulent device to prevent a removal of the cause. Our attention is called to the allegation in the petition to the effect that E. G. Medlock, the engineer, had passed the crossing, was several hundred yards therefrom, and could not have known that appellee was approaching the crossing, and that these facts were known to appellee at the time the complaint was prepared and filed. The allegation of a fraudulent joinder in the petition for removal is directed at the latter part of paragraph (c) in the complaint. A complete joint cause of action is sufficiently alleged in that portion of paragraph (c) down to and including the word "aforesaid" just before the first semi-colon in the paragraph. It was so ruled in the case of *Burke* v. *Missouri Pacific Rd. Co.*, 294 Fed. 1913, and the rule announced in that case is supported by the decisions of the Supreme Court of the United States cited therein. The facts alleged in the first part of paragraph (c) of the complaint referred to were not traversed by the allegations in the petition for removal and, as they

state complete joint cause of action against appellant and E. G. Medlock, the engineer, it is apparent that the petition for removal was insufficient on its face to deprive the trial court of its jurisdiction to try the cause. No facts were set forth therein tending to show that the joinder of appellant and E. G. Medlock in that part of paragraph (c) was a fraudulent device to prevent a removal of the cause. We also think the court properly retained jurisdiction to try the cause after all the evidence had been introduced upon the renewal of appellant's petition to remove said cause to the United States District Court. The record reflects ample evidence of a substantial nature to sustain the allegations of fact contained in the first part of paragraph (c) in the complaint heretofore referred to.

Appellant's next contention for a reversal of the judgment is the refusal of the trial court to peremptorily instruct a verdict for it.

The facts in the instant case bring it within § 8575 of Crawford & Moses' Digest, commonly known as the comparative negligence statute, as there is substantial evidence in the record tending to show negligence on the part of appellant and its employees, as well as to show contributory negligence on the part of appellee.

The testimony introduced by appellee tended to show either that the headlight on the locomotive was not functioning or was in bad repair, and that the bell was not ringing and whistle not blowing as the train approached the public crossing near Protho's gin.

The testimony introduced by appellant tended to show that appellee approached said crossing without exercising ordinary care for his own safety by listening for warning signals that were given, and watching for the train, the headlight of which could have been seen within time to have stopped his truck and prevent the injury.

The rule of the comparative negligence statute is that an injured party, guilty himself of contributory

negligence, cannot recover damages for an injury unless his negligence is of less degree than the negligence of the railroad company or its employees.

The facts detailed above presented the issue of whether appellant was to blame in greater degree than appellee for the collision resulting in the injury, and, on account of the conflict in the evidence, the issue was properly determinable by the jury, not by the court.

Appellant argues that, because appellee did not stop his truck after discovering the train, and thereby prevent the injury, it must be said, as a matter of law, that he was to blame in equal or greater degree than the appellant for the collision and consequent injury. The distance he was from the train when he discovered it was only an estimate, and the evidence tends to show that he did all in his power to stop the truck, and avoid the collision after he discovered the train. He did not testify positively the distance he was from the train when he discovered it, nor that he could stop his truck within thirty-two feet on a hard surface road. The undisputed evidence does not show that he was driving at a reckless rate of speed, or that he could have discovered before he did that a train was coming by listening for signals and watching for same. The evidence tended to show that he did both. The court therefore submitted the issue to the jury for determination under correct instructions. Appellant's criticism of instruction No. 6 to the effect that it was abstract is not supported by the record.

No error appearing, the judgment is affirmed.

SMITH, J., (dissenting). The testimony on the part of the railroad company was to the effect that the train had been made up at Biddle, which is a division point in the suburbs of Little Rock where engines are inspected, and where this engine had been inspected and the headlight found to be in perfect condition, and no trouble of any kind developed during the trip, which began at Biddle; that it was only four or five miles from Biddle to the

Protho crossing, where the collision occurred, and that the run of this train and of similar trains between these points was usually made in about twenty-five or thirty minutes; that the automatic bell ringer was turned on when the train left the yards at Biddle and was not turned off until the train had gone some miles beyond that point; that it was customary to ring the bell with the automatic bell ringer between Biddle and the Protho crossing because of the numerous road crossings between those points, and the engineer and fireman testified that they would not have dared run this train without the protection which a headlight afforded. Dr. Protho, near whose place the collision occurred, testified that he visited the scene shortly after the train had passed, and that the tracks of the truck showed that it was run "head-on" into the train.

If it be assumed that the jury disregarded all of this testimony, and that it was not arbitrary so to do because it was in conflict with other testimony on the subject, there are certain undisputed facts which it was arbitrary to disregard, and among others are these: The country was open and level, and there was nothing to obstruct the view of the approaching train. There had been no rain, and the night was clear, although the testimony does not show whether the moon was shining. Certainly the driver of the truck could have seen an object as large and as long as a train if he had looked, even though the headlight was not burning. More certainly could appellee have heard this train, had he listened. The train consisted of sixty-three cars in addition to the engine, and it had attained a speed of about forty miles per hour at the time of the collision. It could not have done this without making a noise which could have been plainly heard by appellee a sufficient distance away from the track to have enabled him to stop his truck if he had been paying the slightest attention to his surroundings. Appellee admitted that he could have stopped his truck in a distance equal to two or three times its length. The train could not have been stopped in many times that distance.

Appellee was thoroughly familiar with his surroundings, and for some time had been crossing the railroad tracks at the place of the collision twice daily. He knew that he was approaching the crossing, for he and the other occupants of the truck testified that they were listening for trains. Appellee did not claim that the engine struck his truck, but he did testify that he thought it was the first car next to the engine which had struck the truck. He testified. ''I don't know what box car, but somewhere between the second or tenth or twelfth box car, somewhere along there.''

The train crew testified that they knew nothing about the collision until the train stopped at Carlisle, which is twenty-seven miles east of the Protho crossing, when the conductor found part of an automobile radiator hanging on the oil box of the twentieth car from the rear of the engine, and this radiator was identified as the one which had been knocked off of appellee's truck.

The testimony appears to me to establish the fact beyond question that appellee ran his truck into the train; that the train did not hit him, but that he hit it, and if this is true it should be said here, as was said in the case of *St. Louis-San Francisco Ry. Co.* v. *McClinton,* 178 Ark. 73, 9 S. W. (2d) 1060: ''There is a presumption of negligence arising out of the fact that appellee was injured by the operation of a train; but the undisputed testimony is such that it must necessarily appear that appellee's negligence was greater than that of the operatives of the train, and, this being true, a recovery is not authorized by § 8575, C. & M. Digest,'' which is the comparative negligence statute under which the majority have upheld the verdict and judgment of the court herein.

I therefore dissent, and am authorized to say that Mr. Justice BUTLER concurs in the views here expressed.