MISSOURI PACIFIC RAILROAD COMPANY *v.* MILLER.

Opinion delivered June 29, 1931.

*Thos. B. Pryor, W. L. Curtis* and *Thomas B. Pryor, Jr.,* for appellant.

*Partain & Agee,* for appellee.

BUTLER, J. About six o'clock on the afternoon of April 22, 1930, Cruce Miller was traveling in an automobile on the public highway which crossed the line of the Missouri Pacific Railway about four miles east of Sallisaw, Oklahoma, at approximately right angles. The highway ran in a general north and south direction, and the railroad in an east and west direction, and the crossing which Cruce was approaching at the time of the accident was commonly called the Jack Bradley crossing. As Cruce Miller approached this crossing from the north, one of defendant's trains, operated by Frank Hedrick, the engineer, was approaching from the east. Both the automobile and the engine of the train reached the crossing at approximately the same time, resulting in a collision which wrecked the car and injured Miller, from which injuries he died within a few hours. The owner of the automobile, Bryan Miller, a brother of Cruce Miller, and W. F. Miller, as administrator of the estate of Cruce Miller and next of kin, brought suits against the defendants, the owner of the car to recover for damages to same, and the other, as administrator and next of kin, for damages for the injury and death of Cruce Miller. This suit was brought in the circuit court of Crawford County against Frank Hedrick, the engineer, a citizen and resident of the State of Arkansas, and the Missouri Pacific Railroad Company, a foreign corporation. In apt time a petition, accompanied by the proper bond, was filed in the circuit court for the removal of the cause to the Federal court. The petition was denied, and the prayer for removal refused, to which action of the court timely and proper objection was made and exceptions reserved.

A trial was had which resulted in a verdict against both defendants in favor of the plaintiff, the owner of the car, for damages in the sum of $200, and in favor of

the plaintiff, W. F. Miller, as administrator of the estate of Cruce Miller, in the sum of $5,000 and for benefit of next of kin in the sum of $500. Judgment was entered in accordance with the verdict, and within the time provided by law the defendant, Missouri Pacific Railroad Company, filed its motion for a new trial, which was overruled. Thereupon the railway company duly excepted and appealed to this court.

■ It is first insisted that the trial court erred in denying the petition of the defendant railway company for the removal of the cause of action from the Crawford Circuit Court to the United States District Court. The complaint alleged that the train which struck the automobile was being operated by Frank Hedrick at the time of the accident as a servant of the railway company and as the engineer controlling and operating the locomotive, and that he operated such at a careless and reckless rate of speed, to-wit, fifty miles an hour, while approaching the crossing and failed and neglected to ring a bell or sound a whistle or to give any other signal or warning of the approach of said train, and neglected to exercise ordinary and reasonable care to keep and maintain a proper lookout for persons and property approaching, or upon, the crossing; that he failed to exercise ordinary and reasonable care to avoid striking the automobile driven by plaintiff's intestate, and injured him by not giving the proper signals and warning or by stopping and slowing the movement of said engine and train.

In the petition for removal the several allegations of negligence were denied, and the plea of contributory negligence on the part of Cruce Miller was interposed with the further allegation that:

"Your petitioner states that all of the allegations of negligence charging Frank Hedrick jointly with this defendant do not state facts, and the said Frank Hedrick is made a party to this suit for the sole and only purpose of preventing your petitioner herein from removing this cause to the Federal court."

64

"That the grounds of negligence alleged in the complaint state no joint liability on the part of defendants. The employee of the railroad company, so far as the cause of action is concerned, is neither a proper or necessary party. The allegations of the complaint, if conceded to be true, would not render this petitioner and the resident employee jointly liable. Your petitioner states that this is true of each and every material allegation of the complaint. That there are separable controversies involved in this suit, and in none of said controversies is the defendant, Frank Hedrick, a necessary or proper party."

There is no question that the right of a nonresident defendant, sued in a State court, to remove the case to the Federal court cannot be defeated by the fraudulent joinder of a resident employee as codefendant who was in no way responsible for plaintiff's injuries, and that, where an issue of fact is raised upon the petition for removal of a cause to a Federal court, that issue must be tried in the Federal court and not in the State court. *St. L. S. W. Ry. Co.* v. *Adams,* 87 Ark. 136, 112 S. W. 186; *St. L.-S. F. R. Co.* v. *Britton,* 163 Ark. 255, 259 S. W. 730; *Wecker* v. *National Enameling Co.,* 204 U. S. 176, 27 S. Ct. 184.

It is clear from the allegations of the complaint that the negligence of Hedrick was the proximate cause of the collision, and therefore he was liable personally for resulting damages, and the defendant railway company was also liable, as it was alleged that Hedrick was in its employ and the engineer who was in control of the locomotive at the time of the collision. Consequently, a joint cause of action was stated against the employee and the employer under the laws of the State of Oklahoma. *Kugler* v. *White,* 91 Okla. 130, 216 Pac. 903. It will be observed that in the petition there was a mere denial of the allegations of negligence and the declaration that "Frank Hedrick is made party to this suit for the sole and only purpose of fraudulently preventing your petitioner herein

from removing this cause to the Federal court." However, there is no allegation in the petition of any state of facts from which this conclusion might be drawn. It is not denied that Hedrick was the engineer or that he was in charge of, and operating, the locomotive at the time of the collision. The allegations in the petition are much the same as those in the case of *Chicago, R. I. & P. Ry. Co.* v. *McKamy,* 180 Ark. 1095, 25 S. W. (2d) 5, where it is said: "No facts were set forth therein (the petition for removal) tending to show that the joinder of appellant and E. G. Medlock in that part of paragraph 'C' was a fraudulent device to prevent a removal of the cause."

In the case of *So. Ry. Co.* v. *Lloyd,* 239 U. S. 496, 36 S. Ct. 210, the court said: "Allegations in the petition for removal of an alleged separable controversy to the Federal court for diverse citizenship are not sufficient where they amount simply to a traverse of the facts alleged in the plaintiff's petition and in that way undertake to try the merits of the cause of action, good upon its face."

In the case of *Ches. & Ohio Ry. Co.* v. *Cockrell,* 232 U. S. 146, 34 S. Ct. 278, where the allegation of the complaint and those in the petition for removal are in all essential matters the same as those in the case at bar, in passing upon the question of whether or not the case was removable from the State to the Federal court, the court said:

"Rightly understood and much abbreviated, the plaintiff's petition, after stating that the train was being operated by the engineer and fireman as employees of the railway company, charged that the injury and death of the intestate were caused by the negligence of the defendants (a) in failing to maintain an adequate lookout ahead of the engine (b) in failing to maintain any lookout upon the left or fireman's side from which the intestate went upon the track, (c) in failing to give any warning of the approach of the train, and (d) in continuing to run the train forward after it struck the intestate, and was pushing her along, until it eventually ran

over and fatally injured her, when it easily could have been stopped in time to avoid material injury. * * *

"The railway company's petition for removal, while not denying that the engineer and fireman were in the employ of the company or that they were operating the train when it struck and injured the intestate, did allege that the charges of negligence (all being specifically repeated) against the defendants were each and all 'false and untrue, and were known by the plaintiff, or could have been known by the exercise of ordinary diligence to be false and untrue, and were made for the sole and fraudulent purpose of affording a basis, if possible, for the fraudulent joinder' of the engineer and fireman with the railway company, and of 'thereby fraudulently depriving' the latter of its right to have the action removed into the Federal court; and that none of the charges of negligence on the part of the engineer or fireman could be sustained on the trial. * * *

"* * * As in other pleadings, there must be a statement of the facts relied upon, and not otherwise appearing, in order that the court may draw the proper conclusion from all the facts, and that, in the event of a removal, the opposing party may take issue, by a motion to remand, with what is alleged in the petition. * * *

"* * * As they (the engineer and fireman) admittedly were in charge of the movement of the train, and their negligence was apparently the principal matter in dispute, the plaintiff had the same right under the laws of Kentucky, to insist upon their presence as real defendants as upon that of the railway company. We conclude, therefore, that the petition for removal was not such as to require the State court to surrender its jurisdiction." *C. R. I. & P. Ry. Co.* v. *Schwyhart,* 227 U. S. 184, 33 S. Ct. 250; *C. R. I. & P. Ry. Co.* v. *Dowell,* 229 U. S. 102, 33 S. Ct. 684; *Hay* v. *May Dept. Stores Co.,* 271 U. S. 318, 46 S. Ct. 498; *New Coronado Coal Co.* v. *Jasper,* 144 Ark. 58, 222 S. W. 22.

It will be seen from a consideration of the decisions above cited that there were no facts alleged by which a conclusion of fraud could be reached. The petition, therefore, was insufficient on its face, and the trial court did not err in denying the same.

■ The principal reliance for reversal of this case is that the court erred in overruling appellant's request for a directed verdict. This brings in question the sufficiency of the evidence to sustain the verdict. As the injury occurred in the State of Oklahoma, the rights and liabilities of the parties must be governed by the laws of that State. *Mo. Pac. Rd. Co.* v. *Coca-Cola Bottling Co.*, 154 Ark. 413, 242 S. W. 813. It is first insisted that, under the undisputed testimony in the case, the injury was the result of the negligence of the deceased in going upon the crossing in front of the moving train. This question was submitted to the jury under proper instructions, and, regardless of what we might think the undisputed evidence would disclose, we are concluded by the verdict of the jury under art. 23, § 6 of the Constitution of the State of Oklahoma, which section provides: "The defense of contributory negligence or of assumption of risk shall in all cases whatsoever be a question of fact and shall at all times be left to the jury." This provision was considered and construed in the case of *Dickinson* v. *Cole*, 74 Okla. 79, 177 Pac. 570, where it was held that the constitutional provision, *supra*, required that the defense of contributory negligence and assumption of risk should be questions of fact in all cases whatsoever to be determined by jury, and that the finding of the jury upon those defenses is conclusive upon the court. The defendant in that case took the position that art. 23, § 6, of the Oklahoma Constitution, as construed by the court, took from him a vested right and was in violation of the 14th Amendment to the Federal Constitution. The Supreme Court of the United States on appeal affirmed the judgment of the State court, holding that the provision of the Oklahoma Constitution did not contravene the 14th Amendment to the Federal Constitution and that the defendant had

only such right to the defense of contributory negligence as that Constitution allowed.

This was an extreme case. The Oklahoma court, in disposing of the question said: "The uncontradicted evidence shows that the deceased, without anything to obstruct his view of the approaching train for more than a block away, stepped in front of it and was instantly killed. Were it not for art. 23, § 6 of the State Constitution which provides that 'the defense of contributory negligence or of assumption of risk shall in all cases whatsoever be a question of fact and shall at all times be left to the jury,' it would be necessary to hold as a matter of law that the negligence of plaintiff precludes a recovery. * * * The uncontradicted evidence shows that the train was running on acquired momentum with steam cut off and was being controlled by the air brakes; that the automatic bell ringer was ringing and the whistle was sounded for the crossing. Both the engineer and fireman were keeping a careful lookout. The engineer, whose view was obstructed by the boiler, could not see the deceased as he was on the opposite side of the track, but he was seen by the fireman. The latter assumed that the deceased would use the care of an ordinarily prudent person and would not attempt to cross the track in front of the train."

Therefore, in the case at bar, irrespective of the contributory negligence of the deceased, the action of the court in refusing to direct a verdict for the defendants must be upheld if there was any substantial evidence tending to establish any negligence on the part of the defendants which was the proximate cause of the injury.

On the question of the negligence of the operative of the defendant railway company, the evidence is in conflict. Hedrick, the engineer, testified that he was in charge of the train at the time of the accident and saw the automobile before the collision at a time when it was about a thousand feet away from the track; that there was some underbrush quite a way after leaving the rail-

road track on the highway and that he could see the car through that brush; that there was a little hill before reaching the crossing which necessitated the acceleration of the speed of the train to the top of the hill, and from there the ground sloped down to the crossing; that he whistled at the whistling post in the proper manner and at that time he saw Miller approaching; that the latter slowed down about fifty feet before he got to the track—had practically stopped—and then started up again; that at the time Miller stopped he looked in the direction from which the train was coming, and witness assumed that he would remain in a place of safety, but he started up again; that after he saw this witness applied his brakes and sounded the whistle, but it was then impossible for him to stop before hitting the deceased; that, as he approached the crossing after having reached the summit of the hill, the train was not making more than 25 to 30 miles an hour.

The testimony of the engineer, both as to the speed and the whistling for the crossing at the proper and designated point, was corroborated by other operatives on the train, but no one of them saw the automobile immediately before the collision except the engineer. This testimony was supported in part by the testimony of other witnesses and was sufficient to establish due care on the part of the engineer, but for other witnesses who disputed this testimony. Several testified that they were in the immediate vicinity and did not hear any whistle or bell until they heard one or two sharp blasts which attracted their attention, and on immediately looking saw the train strike the automobile. The engineer had testified that he immediately applied his brakes in an endeavor to stop the train when he first became aware that a collision was imminent, but there was other testimony to the effect that the train was a freight train of sixty or seventy cars and that when the train was brought to a standstill the engine had passed over the crossing and was approximately a half mile from the crossing.

A fourteen-year-old boy who lived about 75 yards from the crossing testified that he was standing on the porch facing the direction from which the train was approaching and saw it before it reached the whistle post; that he had been reading about locomotives and the number of drive-wheels some of them had and he was wondering how many this one had and was looking at it to see; that the whistle did not sound before it reached the post, or at it, nor was any bell rung, and the train was coming at a very high rate of speed—faster than witness had ever seen a train run; that it did not whistle until it had reached within about two rail lengths of the crossing when witness heard it whistle twice in quick succession, and, learning that there had been an accident, he went down there. There was some evidence corroborative of this boy's testimony which disputed the testimony of the engineer and from which the jury might have found that the train was running very fast, and that the required and customary signals to apprize of its approach were not given.

In the case of *Oklahoma Ry. Co.* v. *Houck,* 109 Okla. 187, 235 Pac. 499, cited and relied on by the appellant, the following declaration is made: ''While it is the well-settled rule in this State that a verdict based upon conflicting testimony will not be disturbed where there is evidence reasonably tending to support such verdict, yet in a case where there is no competent evidence reasonably tending to support a verdict and judgment, it will be reversed.''

The appellant contends that, although contributory negligence as a defense is concluded by the verdict of the jury, yet the circumstances tending to establish such negligence may be examined and considered in determining whether the defendant was negligent. But, assuming that this is true, the plaintiff in the instant case has adduced direct and positive evidence of the omission of the engineer to make the signals required by law and that the train was running much faster than 25 or 30

miles an hour. There is no evidence which precludes the doubt that Miller failed to see the approaching train. The engineer is the only witness as to Miller's conduct just before the collision, and, while he testified that Miller saw the approaching train, he also testified that he saw Miller put his automobile in motion at a point fifty feet from the track and approach directly toward the track down which the train was swiftly moving. The jury might well have felt that there was a doubt from all the circumstances as to whether or not Miller saw the train or knew that it was approaching, and might have concluded that, had the engineer sounded the whistle for the crossing at the whistle post, such warning would have apprized Miller of the approach of the train.

In *St. L., I. M. & S. R. Co.* v. *Gibson,* 48 Okla. 553, 150 Pac. 455, the court said: ''If the evidence had left a doubt as to whether or not deceased saw the train or knew that it was approaching, then the failure of the defendant to ring the bell and sound the whistle would have raised a question as to whether that failure was not the cause of his going upon the track and thereby losing his life.'' * * *

The appellant contends that there was no testimony tending to support the allegation of the complaint that at the time of the collision and immediately before the train was being operated at a high or reckless rate of speed. The engineer testified that he was operating the train in an ordinarily careful manner and that the rate of progress was not in excess of 25 or 30 miles an hour. The jury had a right to assume from that testimony that any rate of speed greatly in excess of that at which the engineer testified he was traveling might have, under the circumstances, been negligence. There was testimony from which the jury might well have found that the train was traveling much faster than testified to by the engineer. At a short distance from the crossing the train came through a cut and around a bend and there was a rise between that place and the crossing from the

summit of which the ground sloped toward the crossing. The highway was a public one, and it was reasonable to suppose that travelers might at any time be at, or in, the neighborhood of the crossing. Therefore, in operating the train, care should have been exercised in the rate of speed maintained, and from all the circumstances in the case there would be a question of fact to be determined by the jury as to whether or not the train was running at an excessive speed, and, if so, whether or not that constituted negligence. *St. L.-S. F. Ry. Co.* v. *Rundell,* 108 Okla. 132, 235 Pac. 491.

■ A number of instructions were given to the jury over the objection of the defendants, to the giving of which defendants excepted, and they are assigned as error. Most of these instructions were objected to on the ground that there was no competent testimony offered to sustain them on the theory that there was no evidence of primary negligence on the part of the defendants. What we have heretofore said disposes of those questions except as to instruction No. 11. By that instruction the rule for assessing damages was given in the event the jury should find for the plaintiff, W. F. Miller, as administrator of the estate of Cruce Miller, deceased, and it is urged that this instruction was erroneous for the reason that there was no competent testimony tending to show that plaintiff's intestate suffered any conscious mental suffering or physical pain. It is argued that the record discloses that immediately following the accident plaintiff's decedent was unconscious, and some of the witnesses thought he was dead, and there is no testimony other than that of Bryan Miller, his brother, which tends to establish to the contrary. The testimony of all the witnesses was to the effect that plaintiff was breathing when he was extricated from the car and was alive when placed in the ambulance a short time after the accident. Just how long plaintiff lived from that time is not shown, but it is sufficiently certain that he lived for several hours and died in a hospital to which he had been taken. There were no witnesses who testified as to whether or not he ·

was conscious or as to the extent of his suffering from the time he was put in the ambulance at the scene of the collision until he died in the hospital except that of Bryan Miller. Just why witnesses were not called to testify as to his condition while being transported in the ambulance or while he was in the hospital before his death is not shown. It is likely that some one besides Bryan Miller saw him and observed him during that time; but, if so, the brother was the only one who testified. From that testimony, however, it is very clear that he was conscious and that he did suffer. The witness testified that "he groaned and took on" and "wanted to roll over, and I had to hold him," and it was necessary to give him a hypodermic which relieved him to some extent. As before suggested, the evidence on this point is meager, but it is sufficient to warrant the giving of the instruction complained of.

It is our conclusion that there was some substantial evidence tending to establish primary negligence on the part of the defendants, and that there was no prejudicial error committed by the trial court. The judgment is therefore correct, and must be affirmed. It is so ordered.