WALLACE v. LONG, ADMINISTRATOR.

4-7972                                    197 S. W. 2d 20

Opinion delivered November 4, 1946.

*Buzbee, Harrison & Wright,* for appellant.

*Bob Bailey, E. L. Holloway, Joe D. Shepherd* **and** *E. G. Avery,* for appellee.

McHANEY, Justice. Appellee as administrator of the estate of Major Long, Jr., his son, brought this action against appellant to recover damages for the negligent injury to and which resulted in the death of his said son. Appellant was, at the times hereinafter mentioned, engaged in some kind of construction work in or near Tulsa, Oklahoma, under the firm name of James H. Wallace Construction Company, and as such had numerous employees, one of which was appellee's son.

The facts tend to show that, on July 17, 1943, Major Long, Jr., hereinafter called intestate, was an employee of appellant; that he was a colored man, about 22 years old, but was strong and healthy; that he was engaged in unloading from a box car onto a truck what is called "gyp rock" which was sheets or slabs of material 8 feet long, 2 inches thick and 8 inches wide, and weighing about 175 pounds per sheet; that he and five other men were engaged in getting the "gyp rock" out of the car and loading it on a truck standing some 12 to 18 inches from the car, with two men handling each piece, one at either end; that in doing this one man had to walk backward to get out of the car and onto the truck with said material while the other walked forward; and that, at about 2 p. m. of said date, while he and his partner were carrying out a piece of this material, he, walking backward, stumbled over some loose material on the floor of the car as he neared the door and fell out of the door onto the truck, the heavy piece of material striking him in the right side, causing injuries from which he died on August 12, following.

It appears that, in loading said material for shipment by rail, it was stacked in the car in layers, with broken pieces of the same material between the layers to prevent breakage, and as the sheets or slabs were taken out of the car for loading onto the truck, these packing pieces would fall to the floor of the car and were left there, and that intestate stumbled over some of these pieces, causing him to fall.

The negligence relied on was the alleged failure of appellant to exercise ordinary care to provide intestate a reasonably safe place in which to work; permitting the packing pieces to accumulate in the working place; requiring him to walk backwards in carrying said material; in employing a foreman who told them to hurry their work; in parking the truck too far from the door of the car; and requiring him to work in a dangerous place without informing him of the danger.

Trial resulted in a verdict and judgment against appellant for $2,650 for Major Long, Sr., for loss of contributions, and $2,650 for the estate for conscious pain and suffering. This appeal followed.

For a reversal of the judgment, appellant urges that intestate assumed the risk as a matter of law and that the trial court erred in refusing to direct a verdict for him at his request so to do. Our attention is called to the provision of the Oklahoma Constitution, Art. 23, § 6, which provides: "The defense of contributory negligence or assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury." It is conceded that this action is governed by the laws of Oklahoma, since the injury and death occurred there. But, it is insisted, that this provision of the Oklahoma Constitution is procedural and not substantive, and that the courts of this State are not bound on a cause of action arising in Oklahoma on a procedural provision of the Constitution of that State. Citing *Independent Oil Co.* v. *Beacham,* 31 Okla. 384, 120 P. 969 and *Muskogee Vitrified Brick Co.* v. *Napier,* 34 Okla. 618, 126 P. 792. Because of this contention, we are asked to overrule our case of *Missouri Pacific R. R.-*

*Co.* v. *Miller,* 184 Ark. 61, 41 S. W. 2d 971, which holds that said constitutional provision is applicable to trials in Arkansas for injury sustained in Oklahoma. We do not now determine whether our case is right or wrong, for the reason that in our opinion the question of whether intestate assumed the risk was a question of fact for the jury under the law of this state without regard to said constitutional provision.

It is true that we have held in many cases that "where the conditions under which a servant is put to work are constantly changing so as to increase or diminish his safety, it is the servants' duty to make the working place safe and that no duty in that regard rests upon the master," *Moline Timber Co.* v. *McClure,* 166 Ark. 364, 266 S. W. 301, but "that doctrine" says the court, "is an exception to the general rule that the master owes his servant the duty to exercise ordinary care to make the working place—reasonably safe." In that case the general rule was held to apply and not the exception, because the plaintiff there was working under the immediate supervision of the foreman, whose orders he was bound to obey, "and, if the foreman failed to exercise ordinary care in providing a working place—the defendant would be liable under the doctrine of *respondeat superior.*" The undisputed testimony here shows that intestate was working under James Rider, a straw boss or sub-foreman who was also performing the services of a laborer, and that he told intestate and the others, in effect, to leave the debris alone, and to hurry up and get the material out of the car. Rider called himself a "pusher" in getting the work done. So, the exception to the general rule stated above does not apply here, but the general rule. This matter of the foreman is the distinguishing feature between this case and another cited by appellant, *Howell* v. *Harvill,* 185 Ark. 977, 50 S. W. 2d 597. It is conceded that the court correctly submitted the question of assumed risk to the jury, but it is insisted that a verdict should have been directed, because, if the master was negligent in failing to furnish a reasonably safe place to work, still this fact was so apparent and obvious as to be discoverable to a person of ordinary intelligence,

and to know and appreciate the danger, that he should be held to have assumed the risk as a matter of law.

We cannot agree. The effect of the evidence is that the men were being hurried by the foreman who said he had been instructed to leave the debris on the floor. This was the first day intestate had worked at this particular job. He was only 22 or 23 years of age and under all the facts and circumstances, we think the court properly submitted the question of assumed risk to the jury.

On the question of the right of Major Long, Sr., to recover, we think the court should have directed a verdict for appellant, and against his right to recover. Intestate was of age and we think the evidence of his contributions to his father and the latter's dependency on him was very insubstantial. There was no legal obligation on intestate to help support his parents. Appellee testified that intestate earned $35 per week working for appellant, which he brought home and gave to appellee and his wife. His wife was sick, had been for a long time and died some few months after the son's death. The money that intestate contributed was for the care and support of his sick mother, although some of it went for general household expenses. Appellee was only 56 years of age when his said son died. He owns a six-room modest home in Wagoner. He paid his son's illness and funeral expenses to the extent of more than $600 out of his own funds, plus insurance on the son of $305. He was engaged in farming and growing livestock. We think all the facts and circumstances show a total lack of dependency of appellee on the earnings of his deceased son.

There are several facts and attendant circumstances in the record in this case that are not very satisfactory. In fact, they leave us in some doubt whether the intestate received the injuries about which complaint is made at the time and place and while in the service of appellant. For instance, Dr. Bamberl, an osteopathic physician, testified he was first called to see intestate on August 4, 1943, and he administered quinine which is a treatment

for malaria, but the patient did not have malaria, however the medicine was good to reduce his fever. The patient was taken to the hospital in Muskogee on August 11 where he died the next morning. Dr. Earnest of the hospital staff examined him and found him unconscious and in a very bad condition. He made an examination of the patient, but found no evidence of trauma, bruises or abrasions. The father gave him a case history, but made no mention of an injury until about a week after the patient's death, when the appellee, Major Long, Sr., came back and tried to get him to change his death certificate to show that intestate was injured in a Tulsa war plant, instead of showing as it did, that the cause of death was "undetermined." Also some lawyer who was not connected with this case and an undertaker tried to get him to so change his death certificate, all of which he refused to do. Also, "the doctor's death certificate was made out and signed a day or two after the death, but another purported such certificate, dated March 7, 1944, with a typewritten signature of the name "A. W. Earnest," as the doctor making it, was filed with the Bureau of Vital Statistics of Oklahoma, which showed the cause of death of said intestate was "history—accidental injury, Tulsa war plant." He testified he did not make or sign the death certificate of March 7, 1944, and that he did not put in any certificate that the cause of death was "accidental injury, Tulsa war plant."

Another matter is that the payroll records of appellant show that intestate worked for appellant after the date of his alleged injury, and that one or more of the witnesses for appellee was not on the payroll at the time of the injury. Another fact is the complaint was not filed until May 25, 1945, although intestate died on August 12, 1943.

These and other facts and circumstances render it doubtful to our minds that intestate's death was caused by an injury, and that he probably died from functional causes not related to traumatic injury, as testified to by Dr. Earnest. But the jury is the sole judges of the

credibility of the witnesses and the weight to be given to their testimony, and their verdict has resolved the doubt in favor of appellee and we are reluctantly bound by it, in so far as it relates to a finding for the benefit of the estate of said intestate.

The judgment in his favor for loss of contributions will be reversed and the cause dismissed. The judgment for the benefit of the estate will be affirmed.