PRIEST *v.* SILBERNAGEL & COMPANY.

4-4366

Opinion delivered July 13, 1936.

W. F. Norrell, W. W. Grubbs, O. C. Burnside and J. R. Wilson, for appellant.

M. L. Reinberger and E. P. Toney, for appellees.

SMITH, J. Appellant, Mrs. Maggie Priest, is the mother of Barton P. Priest, and is the administratrix of his estate, and in that capacity she brought this suit to recover damages for the alleged negligent killing of her son and intestate.

Testimony was offered at the trial from which this appeal comes to the following effect. On the afternoon of Saturday, July 20, 1935, Virgil T. Priest, a brother of Barton Priest, was driving an automobile which he (Virgil) owned, out of the city of Monticello to the home of his father, who lived some miles from Monticello. As he was leaving town he saw his brother, Barton, in company with another young man named Raymond Vest, and he stopped his car and invited them to ride with him. The invitation was accepted. It was intended to take Raymond Vest to the home of his father, which was on the road to the home of Virgil Priest's father, the destination of the owner and driver of the car. About three-quarters of a mile out of town they overtook a truck owned by Silbernagel & Company which was being driven by James Finney, a colored man. Another colored man was riding with him in the truck. Virgil, who was driving his automobile, honked his horn, and the driver of the truck leaned out of the window and looked back at the approaching automobile. The Priest car had been traveling about 25 miles per hour before it attempted to pass the truck. As the automobile sought to pass the truck, the driver of the truck accelerated his speed and turned the truck to the left, thus preventing the automobile from passing. Several similar attempts were made to pass. On the last and fatal attempt the driver of the automobile blew his horn several times and began to pull up alongside the truck. At this point, the view of the road was unobstructed for something more than 500

feet. The driver of the truck again turned it to the left, thus preventing the automobile from passing. In doing so the truck scraped into and collided with the automobile, pushing it further to the left in such a manner that the occupants of the automobile were unable to see another truck coming from the opposite direction over the crest of a small hill with which the automobile collided before the automobile could be turned back behind the truck which it had been following and had attempted to pass. The road at this point was 36 feet wide, and space would have been afforded for the three vehicles to pass in safety had each observed traffic rules and regulations. The collision wrecked the automobile and killed both Virgil and Barton Priest, who were young men 20 and 19 years old, respectively.

Inasmuch as a verdict was directed in favor of Silbernagel & Company, the owners of the truck which Virgil Priest had attempted to pass, we have stated the testimony in the light most favorable to the plaintiff, as we are required to view it, where a verdict has been directed. It may be said that there are many contradictions in the testimony, but these presented questions of fact for the decision of the jury.

In directing a verdict for the defendant, Silbernagel & Company, the court said that the testimony established the fact that the driver of the truck had been negligent in refusing to permit the automobile to pass and in blocking its passage; but the court also declared that it was established by the undisputed testimony ''that it was the persistency of the Priest automobile that led to and produced the fatal injuries and deaths, that it was the contributory negligence of both the driver of the Priest car and the deceased (Barton Priest), jointly engaged, under their own testimony, in taking whiskey home to their father, and in this joint enterprise, and in their haste and without having any regard for what might be approaching from the opposite direction, that all these circumstances, to the court's mind, clearly evinced that the accident would not have happened, but for the negligence of the Priest boys themselves. Therefore; I shall instruct the jury to return a verdict for the defend-

ants.'' From the verdict and judgment pronounced thereon is this appeal.

Other portions of the court's statement show the conclusion above stated was influenced and reached by a consideration of the fact that the road curved for some distance before passing the point where the collision occurred, which was near the foot of the hill over which the approaching truck was coming, and with which truck the automobile collided. Raymond Vest was thrown from the automobile and rendered unconscious, but he survived the accident, and became the principal witness for the plaintiff. The case rests largely upon his testimony.

It is argued that the boys were drinking whiskey, and probably intoxicated; but the testimony does not establish that fact. Proof to the contrary was made by Raymond Vest and other witnesses. As much as can be said of the testimony to this effect is that it may have presented a question of fact for the jury. There was found in the car after the collision a small bottle of whiskey; but the testimony is to the effect that the whiskey had been given to Virgil Priest by a friend of his father's to take to his father, who was ill at the time. Virgil had the whiskey in the car when he invited his brother and young Vest to ride with him. Carrying the whiskey to the father of the Priest boys appears to have been an incident only of the trip. At any rate, it cannot be said, as a matter of law, that it was an enterprise in which Barton Priest was concerned.

It is unnecessary to consider or decide whether the court was correct in finding, as a matter of law, from what was thought to be the undisputed testimony, that the negligence of appellee's truck driver contributed to and was the proximate cause of the collision. Nor would it be conclusive of this case if it were conceded that the negligence of Virgil Priest contributed to his own death, and that of his brother, as was found by the court. The question would remain whether this negligence could be imputed to Barton, as would also the question whether Barton was himself guilty of negligence contributing to his death.

Vest testified to a remark made by Barton to Virgil just before the collision as follows: "He (Barton) always called him (Virgil) 'Bud.' He says, 'Bud, watch that fellow, he may turn over and hit you.' He said, 'And I believe he is going to make you eat the dust yet'."

This is an ambiguous remark, and is susceptible of more than one construction. The first sentence appears to be a caution to the driver to be careful. The last might be regarded as a challenge to cease "eating the dust." The road was of gravel, and the cars stirred up much dust, which filled the air. This may have been the reason the truck driver "hogged" the road, as Vest said he was doing in refusing to permit the automobile to pass, and the remark last quoted may have been construed by Virgil as a suggestion to speed up and pass the truck. But the inference to be deduced from the remark is a question for the jury. If it was intended to be cautionary, it may have been all that Barton could have said or have done in the exercise of due care for the safety of himself and the other occupants of the automobile. If it was intended to urge Virgil to pass the truck, the jury might find that it was an act of negligence to encourage the attempt to pass the truck under the circumstances stated.

Nor do we think that the negligence of Virgil—if it be conceded that he was negligent—is to be imputed to Barton as a matter of law. The latter was riding as an invited guest of the owner and driver of the car. Certainly it cannot be said, as a matter of law, that the brothers were engaged in a joint enterprise.

Counsel have cited many cases from other jurisdictions defining joint enterprise in the driving of automobiles and the legal consequences thereof. We do not review these cases, as we have a number of our own cases which define the law of this subject as applied to the facts of this case.

In the case of *Itzkowitz* v. *P. H. Ruebel & Co.*, 158 Ark. 454, 250 S. W. 535, Chief Justice McCulloch said: "We have distinctly held that negligence of the driver of a vehicle is not imputable to a guest or other person riding in the car, who is not the employer of the driver,

and who exercises no control over him. (Citing cases). Any occupant of a car or vehicle who has the opportunity to control the action and conduct of the driver, and fails to do so when ordinary care would require it, is guilty of negligence which prevents a recovery of damages, but that constitutes negligence of the occupant and not imputed negligence of the driver." See, also, *Beason v. Withington,* 189 Ark. 211, 71 S. W. (2d) 461, and cases there cited.

Appellee very earnestly insists that the negligence of Virgil Priest in attempting to pass the truck under the circumstances stated was the sole proximate cause of his own death and that of his brother, and that there can be no recovery in this case for that reason. But this cannot be said to be true as a matter of law, even though a jury might so find as a matter of fact. Certainly, the testimony as to the concurring negligence of the truck driver cannot be left out of account in considering that question, and this, as has been said, is a question of fact— a question for the jury, and not one for the court.

We conclude, therefore, that it was error for the court to declare, as a matter of law, that the Priest brothers were engaged in a joint enterprise; and that the negligence of Virgil should be imputed to Barton, this being a question of fact. So, also, is the question whether Barton was guilty of negligence contributing to his death. The judgment must therefore be reversed, and it is so ordered.