LOCKHART *v.* ROSS.

4-4000

Opinion delivered October 28, 1935.

H. P. *Smead* and *Fletcher McElhannon,* for appellants.

J. H. *Lookadoo* and *McMillan & McMillan,* for appellees.

BUTLER, J. This appeal comes from a judgment based on a verdict in an action brought by the appellees against Otto Lockhart and Mrs. Nellie Jobe, residents of the State of Texas, and Lillian Brunner and Louise Trueman, residents of the State of Arkansas, for the injury of a child in the residential section of the city of Arkadelphia, Arkansas, caused by the child being struck by an automobile driven by Otto Lockhart in which the other defendants were also riding. Liability was sought against the defendants other than Otto Lockhart on the theory that they were engaged in a common enterprise with him and that his negligence would be imputable to them. The trial resulted in a verdict in favor of Lillian Brunner and Louise Trueman and in favor of the plaintiff against Otto Lockhart and Nellie Jobe in a very substantial amount, which award by the jury is not questioned by the appellants, as being excessive.

1. The first ground urged for reversal is the refusal of the trial court to remove the case to the district court of the United States. The time within which the defendants were required to answer expired at noon on October 29, 1934, that being the first day of the court. Previous to this time apt notice and proper bond for removal were made and filed and before noon on October 29, 1934, the appellants filed their petition for removal of the cause to the Federal District Court; on the afternoon of the same day, filing what is called ''An Amendment'' to their petition. The last pleading filed was more in the nature of an amended petition than an amendment to the original petition, but this is immaterial. The petition, as first filed, after alleging the nature of the action and the diversity of citizenship of the defendants, contained the following allegations: ''That plaintiffs have improperly and fraudulently joined as defend-

ants in this cause the said Lillian Brunner and Louise Trueman for the sole and only purpose of attempting to defeat or prevent the removal of this cause to the United States District Court; that neither the said Lillian Brunner or Louise Trueman was, or now is, a necessary and proper defendant in this cause, and in their pleadings herein plaintiffs wholly fail to show any cause of action or right of recovery as against either of them, or both of them combined; that there was no common enterprise between them or either of them, and the said defendants, Lillian Brunner and Louise Trueman, in the use of said automobile causing said accident and the alleged negligence of the said Lillian Brunner and Louise Trueman, are not actionable at law nor do said allegations, even if taken as true, entitle said plaintiffs to recovery against said Lillian Brunner and Louise Trueman.''

The amended petition (much abbreviated but stating its essentials), averred that the plaintiffs had improperly and fraudulently joined Lillian Brunner and Louise Trueman as codefendants for the purpose of vesting jurisdiction in the State courts and of divesting the district court of its jurisdiction. Plaintiffs denied with particularity the alleged negligent acts of Otto Lockhart in the operation of the automobile and denied that they knew of any facts from which they would be informed that Otto Lockhart would not be a proper driver, and denied knowledge of any of the alleged defects in the car he was operating. It was alleged that the allegations as to the negligence of the resident defendants were made for the purpose of divesting the district court of jurisdiction, and the true facts were stated to be that Lillian Brunner and Louise Trueman were riding in the automobile as passengers, having no interest in the same and not being engaged in a common enterprise with the petitioners; that the resident codefendants had no knowledge of the perilous position of the child before, or when, injured; that the accident was wholly unavoidable. Further and final allegations were made that ''all of the above facts were known to the plaintiffs at the time of the filing of this cause, or could have been known

by proper investigation; and that all the allegations in plaintiffs' complaint with reference to codefendants, Lillian Brunner and Louise Trueman, were made for the purpose of joining these parties as defendants, so that this court might be vested with jurisdiction, and that the district court of the United States might be divested of its jurisdiction; that plaintiffs have no cause of action against the codefendants, but if they do it is separable from any cause, if any, which plaintiffs have against petitioners.''

It must be conceded that the petition as first filed was insufficient to authorize the removal of the cause. The allegation as to the fraudulent joinder merely stated a conclusion of law. No facts were alleged from which that conclusion might be deduced. This is necessary, and the failure to state the facts is fatal to the petitioner's right to remove for that cause. The allegations of the petition for removal considered by the court in the case of *Chesapeake & Ohio Ry. Co.* v. *Cockrell,* 232 U. S. 146, are set out in *Missouri Pac. Ry. Co.* v. *Miller,* 184 Ark. 61, 41 S. W. (2d) 971, with relation to the fraudulent joinder for the purpose of conferring jurisdiction in the Federal court are much fuller and more explicit than in the petition involved in the instant case, but the court there held that the allegations presented no basis for the relief prayed. It said that to merely apply the epithet ''fraudulent'' will not suffice. In *Wilson* v. *Republic Iron Company,* 257 U. S. 92, 42 S. Ct. 35, the court held that in a petition for removal the showing relating to the fraudulent joinder ''must consist of a statement of facts rightly leading to that conclusion apart from the pleader's deductions.'' This court recognized the force of this rule in *Mo. Pac. Ry. Co.* v. *Miller, supra,* and in *Phillips Petroleum Company* v. *Jenkins,* 190 Ark. 964, 82 S. W. (2d) 264.

Under the rule announced, it therefore appears that the allegation as to fraudulent misjoinder was not imperfectly stated in the petition but, on the contrary, there was a total lack of allegation upon which the prayer of the petition might rest. The amended petition did not amplify pertinent allegations of the first petition nor does it set out in proper form what had theretofore been

improperly stated, but injects a necessary allegation not contained in the first petition.

It has been held that, after time for pleading in the State court has passed, court may permit a petition previously filed to be amended where the amendment is a mere matter of form and not of material nature. *Roberts* v. *Pacific & A. Railway & Nav. Co.,* 104 Fed. 577. And it is generally held that in the Federal courts the petition for removal may be amended where the amendment goes no further than to cure technical defects and to clarify allegations imperfectly stated or to amplify them. *Carson* v. *Dunham,* 121 U. S. 421, 7 S. Ct. 1030; *Frazier* v. *Hines,* 260 Fed. 874; *Amerson* v. *W. U. Tel. Co.,* 265 Fed. 909; *Hall* v. *Payne,* 274 Fed. 237.

It is doubted whether in any case except in mere matters of form an amendment can be entertained in the State court to a petition filed within apt time where the amendment is filed after the period allowed for the filing of the petition for removal. Such an amendment was allowed by the Supreme Court of North Carolina in the case of *Newton* v. *Liggett Meyers Tobacco Company,* 194 N. C. 816, 140 S. E. 742, but in that case the motion for leave to amend was made prior to the expiration of the time to answer. The court held that, for the purpose of a motion for removal, the amendment to the petition was deemed to have been filed as of the date of the motion to amend, and in that case it was further observed: "The amended petition is but a restatement of the grounds for removal."

In the case of *Security Co.* v. *Pratt,* 65 Conn. 161, 32 Atl. 396, the Supreme Court of Connecticut, after stating the grounds for removal because of diverse citizenship, said: "There are decisions of circuit courts in support of the view that petitions which show no case for a removal may be amended or replaced by another at any subsequent time by leave of the State court, and that such action will relate back to the time when the original petition was filed. Such a doctrine seems to us to contravene the theory on which the fact of removal depends. In a case where a right of removal exists, the filing in due season of a proper petition and bond, when brought

to the attention of the State court, *ipso facto* withdraws the suit from its jurisdiction; and, if the petition is thereafter amendable at all, it is only in the circuit court, and not there to the extent of introducing any new ground of removal. If, on the other hand, in such a case the petition claims the right of removal on wrong grounds, while it can be amended or replaced by another at any time within the period allowed for filing an original petition, yet, should this not be done, to allow the State court afterwards, by permitting an amendment, to make the suit removable, by virtue of a legal fiction as to the relation of amendments to the date of the pleading amended, is to allow the authority of a State to supplant the authority of the United States in regulating the jurisdiction of the courts of the United States.''

The case of *Brigham* v. *Thompson Lumber Co.*, 55 Fed. Rep. 881, was a case arising in a State court where in apt time a motion to remove to the Federal court was filed. Thereafter, and after the time for removal had expired, a second, or amended petition for removal was filed. The case was removed to the Federal District Court on the theory that while the petition as first filed was not sufficient the amended petition was and related back to the time when the original petition was filed. The district court, in remanding the case, said: ''The petition, not alleging the necessary jurisdictional facts, is a nullity, and the doctrine of relation has no application. There is, of course, no objection on principle to the amendment of a petition. There is no objection to the filing of a second petition, provided it is done within the time prescribed by Congress. But when the time goes by the right is lost. To allow an amendment to the petition after that is the same as allowing a new petition, and either is a clear violation of the law. One purpose of the law was a severe restriction in respect to the time. The object was to require the party to change the forum at once, before waiting to experiment in the State court, either to contest the tribunal, or for mere purposes of delay.''

In *Frisbie* v. *Chesapeake & O. Ry. Co.*, 59 Fed. 369, Judge TAFT, in approving the decision, *supra,* said: ''The

time within which the necessary petition should be filed is fixed by the statute. It cannot be extended in the discretion of either the Federal or the State court. For the State court to allow an amendment to the petition for removal which shall relate back to the time when the original petition was filed is merely an indirect mode of extending the time within which a removal can be effected."

If we assume that the petition as amended states a removable cause, the amendment, under the authority of the cases cited, came too late, and the trial court did not err in denying the petition.

2. The next question presented is on the contention that the court erred in submitting to the jury the liability of Nellie Jobe, and in giving instruction No. 11 relating to her liability and the others who were travelling as guests in Lockhart's car. Our conclusion is that this contention must be sustained. The liability of Nellie Jobe is predicated on the theory that she and Lockhart were engaged in a common enterprise. The only evidence upon which this theory is based is testimony to the effect that Nellie Jobe is the mother of Otto Lockhart; that she had been for a period of time in Hot Springs, and that Lockhart drove from Kilgore, Texas, their home, to Hot Springs for the purpose of bringing his mother back to Texas. Lockhart is a man forty-five years of age and owned the automobile. There is a total want of evidence to show that Nellie Jobe had any control over the use of the automobile at the beginning of the journey, or as it progressed, or that she had equal authority with the driver to prescribe the conditions of its use. There is no conflict in the evidence in this regard, and no question of fact to submit to the jury. In one of the cases collected in the notes to 80 A. L. R. 312, relied on by the appellee, this rule is stated: "The basis of liability of one associate in a joint enterprise for the tort of another is equal privilege to control the method and means of accomplishing the common design. If the means employed be an instrumentality the negligent use of which inflicts injury, the associate whom the law regards as participating in the conduct of the actor must have had equal control over its use. This control, how-

ever, need not have extended to actual manipulation at the time injury was inflicted. It is sufficient that, at the beginning of the enterprise, or as it progressed, or at any time before the tortious event, he possessed equal authority to prescribe the conditions of use." *Howard* v. *Zimmerman*, 120 Kan. 77, 242 Pac. 131.

In *Roland* v. *Anderson*, (Mo. App.), 282 S. W. 752, cited by appellee, Anderson was held liable for the negligent driving of O'Toole on the basis, not of joint enterprise, but on that of master and servant or agency. Anderson was the owner of the automobile in question and O'Toole drove it at Anderson's request on the occasion when a third person was injured by its operation. The court said: "While it is not shown that Anderson specifically issued orders to O'Toole as to what streets he should take, and in what manner the automobile was to be driven or operated, yet he, as the owner of the car had such right to control and direct it." It will be noted that this case was decided by one of the Courts of Appeal in the State of Missouri, and not by its Supreme Court. Other cases are cited by appellee, but such as might appear to hold contrary to the doctrine stated in *Howard* v. *Zimmerman, supra,* have no foundation in reason or authority.

Our court, in the case of *Minor* v. *Mapes*, 102 Ark. 351, 144 S. W. 219, held that the wife's negligence in driving the car warranted a verdict against the husband because of the common-law liability on the husband for torts of the wife. Also, that, where one is riding with his wife or minor child in a vehicle driven by the one or the other, he is presumed to exercise some control over them under those circumstances, at least to the extent of preventing an act of negligence which is calculated to result in injury to another, and it is his positive duty to do so. In that case the evidence was conclusive that the husband was sitting by his wife, and whatever danger there was in driving was as obvious to him as it was to her, and he needed no knowledge or experience in the operation of the machine to be apprized of the danger. The general rule announced in that case as to the liability of one who rides with another merely upon invita-

tion, and exercises no control over him, and is not guilty of any positive act of negligence, is that the negligence of the driver cannot be imputed to him so as to render him liable for damages.

In *Anthony* v. *Keifner*, 96 Kansas 194, 151 Pac. 524, it was held that a mother who rides in her son's automobile merely as his guest, and who has no control over, and takes no part in the handling of, the car, is not responsible for injuries inflicted on another on account of the negligent driving of the automobile by her son.

In Cyc. of Automobile Law and Practice, Blashfield, vol. 4, chapter 65, page 171, § 2372, it is said: "A person accepting an invitation to ride in the automobile of another does not, merely, by reason of such fact, thereby engage in such common enterprise or joint adventure with the driver as to absolve either from liability to the other for an act of negligence. An essential, and perhaps the central, element which must be shown in order to establish a joint enterprise is the existence of joint control over the management and operation of the vehicle, and the course and conduct of the trip. There must, as said in another connection, in order that two persons riding in an automobile, one of them driving, may be deemed engaged in a joint enterprise for the purpose of imputing the negligence of the driver to the other, exist concurrently two fundamental and primary requisites, to-wit, a community of interest in the object and purpose of the undertaking in which the automobile is being driven, and an equal right to direct and govern the movements and conduct of each other in respect thereto. "If either or both of these elements is absent, the absence thereof is fatal to the claim of joint enterprise." * * * (page 176.) "The doctrine of joint adventure, in connection with the operation of motor vehicles, should be restricted to those cases where the common right to control its operation, and the correlative common responsibility for negligence in its operation either are clearly apparent from the agreement of the parties or result as a logical and necessary conclusion from the facts as found."

It would be extending the doctrine too far to say that, because of the relation of a mother to a son, the latter's negligence would be imputable to the mother merely because of that relationship. *Bryant* v. *Pacific Electric Co.*, 174 Cal. 737, 164 Pac. 385; *Lange* v. *New York, etc.*, 89 N. J. L. 604, 99 Atl. 346; *Jacobe* v. *Goins*, (Tex. Civ. App.), 3 S. W. (2d) 535.

3. It is next insisted that the court erred in giving instruction No. 3 at the request of the plaintiff, which, after prescribing the duties of one driving an automobile with respect to keeping a constant lookout, and regarding the duty to drive at a careful rate of speed not greater than is reasonable, having due regard to the traffic and safety of others, concludes with the following language: "And it is the duty of such a driver to keep his automobile under such control as to be able to check the speed or stop it if necessary to avoid injury to others when danger is apparent. If you find from the evidence in this case that the defendant, Otto Lockhart, at the time of the alleged injury, failed to observe any of the duties required of a driver of an automobile, and the plaintiff Ada Jean Ross was injured thereby, this would constitute negligence." It is argued that the language above quoted offends against the rule announced in *Coca-Cola Bottling Co.* v. *Doud*, 189 Ark. 986, 76 S. W. (2d) 87: "That the driver must have his car under such reasonable control as would enable him to avoid accidents which might be foreseen by the exercise of ordinary care." The contention is that the instruction given imposes a higher degree of care on the operator of the car than that required by the rule quoted. We do not think so, because, in the exercise of ordinary care, when the driver sees danger ahead, or it is reasonably apparent if he is keeping proper lookout, then the duty is imposed upon him, and the reasonable control of the car requires, that it be operated so it can be stopped in the threatened emergency. The instant case is quite different in fact from the case relied on, as will be seen from the statement of facts contained therein.

4. It is lastly insisted that the trial court should have directed a verdict in favor of the defendant Otto

Lockhart. The evidence with relation to the situation of the child and the circumstances immediately attendant upon the happening of the injury is in conflict. That upon the part of the appellants tends to show that the injury to the child was the result of an unavoidable accident, and that adduced by the appellees was sufficient to submit to the jury the question of whether the appellant, Otto Lockhart, was in the exercise of due care when the injury occurred. Appellants were entering the city of Arkadelphia on the journey to Texas *via* Texarkana, and had proceeded along a street thirty feet wide from curb to curb to a point beyond the city limits in the residential section. The injury occurred near a point where an automobile was parked on the opposite side of the street from that on which appellant was driving. As he approached this point, he turned to the left to pass a wagon loaded with cotton which was driving on the same side of the street. There was evidence to the effect that in making this movement Lockhart could have passed the wagon without driving his car to the left of the middle line of the street, but that instead of doing this he drove his car so that the right wheels were about on the middle line, and the balance of the car to the left of the middle line. The child was crossing on her way to school, and had reached a point on the street about a third or fourth of the distance between the left curb and the middle line when she was struck by the bumper of the car near its left-hand light. There is some evidence that the child was crossing from forty to fifty feet below where the car was parked and seventy-five feet beyond the wagon. This evidence was a substantial basis for the conclusion reached by the jury that Lockhart was negligent in the operation of his car, either in not seeing the child or in not swerving back to the right ahead of the wagon. There was evidence that this latter movement could have been made, as there was no vehicle or person ahead of the wagon to prevent it.

The judgment of the lower court will therefore be affirmed as to the appellant, Otto Lockhart, and reversed, and the case dismissed as to the appellant, Nellie Jobe.