ROGERS *v.* CRAWFORD.

4-9750                                    247 S. W. 2d 1005

Opinion delivered April 14, 1952.

*Lookadoo & Lookadoo,* for appellant.

*McMillan & McMillan,* for appellee.

GRIFFIN SMITH, Chief Justice.   Paul Rogers and his wife, in an automobile owned and driven by the husband, collided with or were hit by an automobile driven by Miss Esma Sue Crawford.   The incident occurred at the intersection of Caddo and Sixth streets in Arkadelphia. Both cars were damaged.   Mrs. Rogers sustained personal injuries and joined her husband in an action against Miss Crawford who cross-complained, asserting that the collision and consequent damages and injuries were due to the carelessness of Paul Rogers, whose negligence should be imputed to Mrs. Rogers because the two were engaged in a joint enterprise. The jury's verdict absolved each participant.   In the Rogers motion for a new trial seventeen assignments were urged as errors.

No witness contradicted the testimony of Paul Rogers that on Saturday preceding the collision Sunday afternoon at three o'clock he asked Mrs. Rogers and two of their children to accompany him to Lake Hamilton to fish.   Mrs. Rogers admitted that she was quite willing to go, enjoyed fishing, and that the arrangements were satisfactory.   But she did testify that Paul was going "over there anyway" and that she went along for her own enjoyment.   When the collision took place Rogers and his wife were traveling east on Caddo street.   Their speed is a matter of dispute, but Paul estimated that when Sixth street was reached he was traveling approximately 20 miles an hour.   Testimony was that he had virtually stopped at Seventh street while another car made a left turn, and that the speed attained when Sixth street was reached had been "picked up" in the intervening block.   Caddo street is a part of Highways Seven and Eight.

Miss Crawford had been out of the city and was returning on the old Gurdon Highway. In entering Sixth street she turned north, driving at a speed she estimated

to be 15 or 20 miles an hour. Caddo is a through street. A stop sign warns traffic entering it from Sixth. Miss Crawford's testimony is that she came to a full stop in obedience to this warning, then entered the intersection at five miles an hour and signalled a left turn. She was struck by the Rogers car while her automobile was in the southeast corner of the cross-area. Miss Crawford says that she stopped immediately, but that the Rogers car continued east on Caddo 150 or 200 feet.

The only issue presented by the appeal relates to instructions. They cover 17 typewritten pages, legal size. An objection urged in appellants' brief is that these directions to the jury were not given in proper sequence and that this amplified uncertainty in respect of the applicable law. Appellee calls attention to the fact that this objection was not made to the trial court, and thinks acquiescence must be implied.

It is generally held that the order of giving instructions is a matter resting within the court's discretion; and unless unusual circumstances clearly disclose prejudice a judgment will not be reversed because the losing party believes that a different arrangement would have been better. [See cases cited in Branson's Instructions to Juries, Reed's 3d ed., v. 1, p. 249].

It is argued—and, as we think, with controlling merit —that the volume of instructions necessarily confused a jury of laymen. Two instructions given on behalf of the defendant defined preponderance of the evidence. The second (defendant's Instruction No. 4) is binding in that it concludes with the expression, ". . . then the party on whom the burden rests to prove *the same* by a preponderance of the evidence must be deemed to have failed in regard thereto." It is not clear whether "thereto" refers to "the same" or to the case as a whole.

Defendant's Instruction No. 7 explains proximate cause by saying that any injuries sustained by the plaintiff ". . . must have been the natural and probable consequences of the alleged negligent acts or omissions." It then goes on to say that "It is not necessary that the effect of the negligent acts or omissions, if any, would

in all cases, or even ordinarily, be to produce the consequences which followed. . . ."

This language is taken almost by copy from *Helena Gas Company* v. *Rogers*, 104 Ark. 59, p. 62, 147 S. W. 473. Judge KIRBY, who wrote the opinion, cited as authority for the language first quoted *Milwaukee Ry. Co.* v. *Kellogg*, 94 U. S. 476, 24 L. ed. 256. Mr. Justice STRONG, who delivered the opinion, said that the question [in determining proximate cause] must always be whether there was an intermediate activation disconnected from the primary fault, and self-operating, which produced the injury. But, said the Judge, the inquiry must be answered in accordance with common understanding, [for] "in a succession of dependent events an interval may always be seen by an acute mind between cause and its effect, though it may be so imperceptible as to be overlooked by a common mind. . . . In the nature of things there is in every transaction a succession of events more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies; and this must be determined in view of the circumstances existing at the time."

A second citation in support of the Rogers decision—*St. Louis, I. M. & S. Ry. Co.* v. *Bragg*, 69 Ark. 402, 64 S. W. 226—contains this language by Judge RIDDICK: "We therefore feel compelled to hold that the long train of physical ills of which [Mrs. Emma Bragg] complained was not the natural or probable consequences of [the railroad company's] negligence. No prudent man, knowing all the circumstances, could have foreseen such consequences; and the defendant, under the rule stated, is not responsible for them."

This citation is followed in the Rogers case by a statement (substantially included in the case at bar), that "It is not necessary that the effect of the act or omission complained of would in all cases, or even ordinarily, be to produce the consequences which followed, but it is

sufficient if it is to be reasonably apprehended that such an injury might thereby occur to another while exercising his legal right in an ordinarily careful manner; or, in other words, if the act or omission is one which the party ought, in the exercise of ordinary care, to have anticipated as likely to result in injury to another, then he is liable for any injury proximately resulting therefrom, although he might not have foreseen the particular injury which did happen.''

It will be seen that foreseeability respecting the precise consequences of a negligent act may be the test of proximate cause in circumstances such as those discussed by Judge RIDDICK (where Mrs. Bragg complained of consequential illness because she was put off of a train a short distance from the depot platform); but the ability to contemplate a particular injury is not essential if the natural result of the negligent act may, even in extraordinary circumstances, be to injure another or cause damage to property.

The language in Instruction No. 7 difficult for a jury to comprehend comes about when the fact-finders are told that if injuries were sustained by the plaintiff because of the collision with defendant's car, these injuries, to come within the definition of proximate cause, must have been the natural and probable consequences of the act complained of; but, secondarily, (says the instruction) it is not necessary that the *effects* of the negligent acts or omissions would even ordinarily produce the consequences which followed. It would seem that if *the injuries* were the natural and probable result of the conduct complained of, then such conduct would ordinarily produce these results; but the instruction is to the contrary. But again we are met with the opinion written by Judge KIRBY in the Rogers case. If there is an explanation it is that the court thought the holding was appropriate in view of the facts there presented. But here, under an allegation that a stop sign had been passed and that the wreck occurred because the two cars came together within the intersection, the inconsistency of the instruction is apparent.

The concluding part of defendant's Instruction No. 9 told the jury that if Miss Crawford had entered the intersection before the Rogers car was close enough to constitute an immediate hazard, "then she was entitled to proceed on through the intersection unmolested and was not negligent if she did so, because Rogers would in those circumstances be under a duty to yield the right of way to Miss Crawford, even if she may not have stopped at the stop sign. 'Intersection' does not mean the point where the middle or center of two streets would cross each other, but means the entire space which is common to both streets."

While the definition of intersection is correct, the instruction leaves out of consideration the duty devolving upon the defendant under the last clear chance doctrine. If in fact she "ran" the stop sign at a time when the Rogers car did not constitute an immediate hazard, there was not a continuing right to proceed if during the interval between entering the intersection and the collision Miss Crawford saw the Rogers car in time to avoid or mitigate the injury and damage. This instruction is binding in that it mentions the circumstances justifying the defendant's actions and says that in the circumstances described the defendant would not be negligent. The defendant was given a second instruction on proximate cause (No. 10) to the effect that if the evidence did not disclose negligence, "or if her negligence was not the proximate cause of the collision," then the plaintiff cannot recover.

There were general objections to all of the instructions. Nos. 8, 9, 11, and 12 were specifically objected to on the ground that they were argumentative, and in addition it was contended that No. 12 was improper because the undisputed evidence showed that Mrs. Rogers did not have a right to direct the car. No. 13 was objected to for the same reason.

Instruction No. 13 was: "You are instructed that Mrs. Rogers, even as a guest, was required to exercise ordinary care for her own safety, [and] . . . if you find that Rogers was not keeping a proper lookout, or

was driving the car at such a rate of speed or with such a lack of control as to be dangerous to persons riding therein or other vehicles entering the street, and if you find that a person of ordinary prudence riding as an occupant in the car would, under the same or similar circumstances and in the exercise of ordinary care, have remonstrated with the driver for his failure to keep a lookout and as to the rate of speed or the manner of handling the car, and if you find that Mrs. Rogers failed to remonstrate with her husband, this would be negligence on her part; and if such negligence, if any, contributed in any way to the collision, Mrs. Rogers cannot recover.''

Mrs. Rogers admitted that she had not cautioned her husband on the occasion in question or at any other time; believing, as she expressed it, that suggestions were not necessary. The instruction is copied because it is binding, and because of its proximity to No. 12. Plaintiffs' Instruction No. 4(a) would have cured any defects in the defendant's Instruction No. 12 but for the fact that No. 12 is binding.

Unless the facts are undisputed and the evidence conclusively discloses that one who is not driving an automobile was engaged in a joint enterprise with the driver, —an enterprise of a character permitting the negligence of the party at fault to be imputed to one associated with him—the question is one of fact and must be submitted to the jury. *Priest* v. *Silbernagel & Co.*, 192 Ark. 973, 96 S. W. 2d 466.

Joint enterprise and joint adventure, in legal contemplation, are synonymous terms. Instruction No. 12 permitted the jury to determine whether Rogers and his wife, when the collision occurred, were ''engaged in a joint enterprise for their joint benefit.'' It also allowed the fact-finders to say whether the husband and wife ''had an equal right to direct and govern the operation of the vehicle,'' and it told the jury that if Mrs. Rogers had such a right, then she could not recover if the husband's negligence contributed to the event.

Our conclusion is that testimony on the question of joint adventure or joint enterprise was not of a character

creating that relationship within legal contemplation. Paul Rogers was foreman for a lumber company. He and Mrs. Rogers were jointly interested with Paul's brother in a grocery store, where Mrs. Rogers worked. Their bank account was such that either could check against it. An automobile once owned by the two had been disposed of, but the car driven when the collision occurred was in Paul's name. Its purchase was financed through an Arkadelphia bank and the notes were signed by Paul only.' However, it was conceded that each had a right to use it. The trip to Lake Hamilton was made at Paul's suggestion. He asked Mrs. Rogers to go with him and inferentially wanted the children to accompany them. Mrs. Rogers testified that "Paul was going over there anyway and he asked me to go fishing. I like to fish and I went and took the two children." She had nothing to do with Paul's driving. No directions were given as to the route that was to be traveled. Paul was not cautioned because it had not been necessary—in fact, Mrs. Rogers had not at any time cautioned her husband about driving, nor did she interfere with his operation of the machine. Although having the right to use the car, she had not in fact driven the car that figured in the wreck.

Instruction No. 12 is as follows: "If you find that Miss Crawford and Paul Rogers were both negligent and that the negligence of each of them contributed to the collision then neither Miss Crawford nor Paul Rogers can recover and in this event you will then determine whether the negligence of Paul Rogers should be imputed to Mrs. Rogers to bar a recovery by her. In this regard you are instructed that if Mrs. Robbie Rogers was riding in the car as a guest she is not chargeable with the negligence of Paul Rogers. But if Mrs. Rogers and her husband were engaged in a joint enterprise for their joint benefit, that is, if the object and purpose of the trip in which the Rogers were engaged, was for their joint interest and both Mr. and Mrs. Rogers had an equal right to direct and govern the operation of the vehicle, then the negligence of Paul Rogers, if any, would be chargeable to Mrs. Rogers and if the negligence of Paul Rogers

contributed in any way to the accident, Mrs. Rogers cannot recover."

No doubt this instruction was written with *Stockton v. Baker* as a pattern, 213 Ark. 918, 213 S. W. 2d 896. There Mrs. Baker owned the automobile and was driving it. Her husband was a retired railroad engineer and did not own or drive a car. He was on the front seat beside Mrs. Baker when she—an experienced driver of 17 years—undertook to pass a truck. When the automobile, responsive to Mrs. Baker's efforts, had proceeded to the left and forward far enough for Baker to observe oncoming traffic, he apparently saw the taxicab with which the collision occurred and shouted, "Look out!—Look out!" The warning was either disregarded or came too late. Mrs. Baker sought compensation from Stockton, driver of the taxicab with which she collided. She also asked for $10,000 for the benefit of her husband's estate, he having died shortly after the mishap as a result of injuries there sustained. The questioned instruction given at Stockton's request was:

"If you find from a preponderance of the evidence that J. E. Baker and his wife were engaged in a joint enterprise, the negligence of Lillie Baker, if any, would be imputed to her husband. . . . In order for a joint enterprise to arise two fundamentals and primary requisites must concurrently exist, to-wit: A community of interest in the object and purpose of the undertaking in which the automobile is being driven, and an equal right to direct and govern the movements and conduct of each other in respect thereto. If either or both of these elements is absent, there is no joint enterprise."

But Instruction No. 12, with its binding aspect, and absent a definition of joint adventure, is prejudicial and could be reached by a general objection. It was objected to specifically "for the reason that it is not the law, and there is no evidence in the record to base [it] on, [and (2)] the undisputed evidence shows that Mrs. Rogers had no right whatever to direct and govern the operation of the car."

With the latter conclusion we are in accord.

A case where the jury was entitled to say whether husband and wife were exercising joint control of an automobile is *Johnson* v. *Newman,* 168 Ark. 836, 271 S. W. 705. There the wife was driving, but her husband was seated next to her and was actively giving directions. In holding that negligence of the husband was a factual matter to be determined under the law of agency, Chief Justice McCulloch pointed out that the so-called "family purpose" doctrine as a basis of tort actions involving automobile collisions had not been accepted in this state. See *General Exchange Insurance Corporation* v. *Arnold,* 206 Ark. 224, 174 S. W. 2d 543.

An opinion written by Mr. Justice Burr W. Jones for the Supreme Court of Wisconsin is impressively pointed: "In one sense," said the Judge, "husbands and wives in their journey through life are always engaged in joint enterprises, sometimes successful, sometimes disastrous. But the mere fact that they travel in the same car, whether for pleasure or to change their abode, does not constitute a joint enterprise, within the meaning of the rule under discussion. Doubtless there may be such special facts showing agency or such joint financial interest in the undertaking as to make the negligence of the husband imputable to the wife and to defeat a recovery on her part. But no such facts are found in this case, and there is certainly no presumption that any such relation existed. It was merely the ordinary social and domestic relationship involved when husband and wife are traveling together. There are numerous cases which hold that when a wife is traveling with her husband when they are not engaged in any joint enterprise, and when she has no direction or control over his movements she is not chargeable with his negligent acts. In other words, from the mere marital relationship the contributory negligence of the husband is not to be imputed to the wife." *Brubaker* v. *Iowa County,* 183 N. W. 690, 174 Wis. 574, 18 A. L. R. 303.

In *Hiller* v. *Shaw,* 187 N. E. 130, 45 Ohio App. 303, the court's opinion by Mr. Justice Sherick held that a wife, who at the time of collision was driving her hus-

band's automobile, with her husband beside her—these primary facts were insufficient to take the case to the jury in a proceeding against the husband, the issue being joint enterprise or imputed negligence.

A case from a nearer jurisdiction, *Silsby* v. *Hinchey*, (St. Louis Court of Appeals), 107 S. W. 2d 812, held that as a general proposition a wife is a guest in an automobile driven by her husband; and his negligence is not imputable, since the wife lacks the right to control her husband's actions. This is true because the husband, "being in no sense of the law her servant or agent, [the wife] is merely to be regarded as her husband's guest when riding with him in an automobile which he is driving."

In the application of *Silby* v. *Hinchey* to the case at bar it should be emphasized that under our decisions agency is not to be presumed from the relationship of husband and wife.

*Corn* v. *Kansas City, C. C. & St. J. Ry. Co.*, Mo. App., 228 S. W. 78, held that where the plaintiff and her husband went in an automobile to a depot to get their daughter, they were not engaged in a joint enterprise, and the husband's negligence in driving the car was not imputable to the plaintiff so as to prevent recovery for the negligence of the operators of an interurban car. The action involved a street intersection collision.

In the Wisconsin case to which attention has been called *(Brubaker* v. *Iowa County)*, husband and wife were moving to another city where the husband intended to teach and the wife was to attend college, her purpose being to thereafter obtain a position. It was held as a matter of law that under the facts the wife had no control over the automobile and therefore was not responsible for its direction.

Our decisions—particularly *Stockton* v. *Baker*—have considerably broadened the generally-accepted definition of joint adventure, or joint enterprise.

A Louisiana case—*Neuman* v. *Eddy*, 130 So. 247, 15 La. App. 45, is to the effect that when two persons mu-

tually agree on a trip, but the one owning the automobile had the sole right and control in driving, the trip was not a joint adventure. The same court (*Rhodes* v. *Jordan,* 157 So. 811) said that in order to constitute a joint adventure between the driver and occupant of an automobile, each must have equal right to control the operation of the car.

Definitions from many courts are to be found in Words and Phrases, v. 23, Joint Adventure. An Iowa case to which attention is called—*Churchill* v. *Briggs,* 225 Ia. 1187, 282 N. W. 280—holds that joint enterprise, or common enterprise, is not to be determined by the fact that the parties are going to the same place on the same mission; rather, the test is whether the guest in some manner had the right of control over the means of locomotion.

A clear expression is found in *Bloom* v. *Leech,* 166 N. E. 137, 120 Ohio St. 239. Mr. Justice ROBERT H. DAY, in writing the court's opinion, quoted the rule adopted by the Supreme Court of Connecticut in *Coleman* v. *Bent,* 100 Conn. 527, 124 A. 224: "A joint adventure in the use of an automobile implies a common possession and right of control of the vehicle and a responsibility for its negligent operation equally common to all of its occupants; and therefore the rule or doctrine of joint adventure should be restricted to cases in which these essentials are clearly apparent from the agreement of the parties, or arise as a logical inference or legal conclusion from the facts found by the triers."

The language of Instruction No. 12 permitted the jury to determine whether the trip from Lake Hamilton to Arkadelphia was for the "joint interest" of Rogers and his wife, and to decide, from the meager testimony regarding control, that the right to direct was mutual.

Our conclusion is that in the absence of a clear definition of joint adventure and joint responsibility of control, the instruction was inherently erroneous. *Johnson* v. *Newman* illustrates the proposition that some affirmative conduct must be shown other than the naked fact that husband and wife are driving in the same car. A holding

that the jury may, in any case where husband and wife have been driving in circumstances agreeable to each, conclude for the purpose of defeating or sustaining damages that the trip is a joint adventure and that the wife owes a duty to the traveling public to actually or constructively direct the car,—such a determination would cause front-seat occupants to burgeon with the satisfaction of legal responsibility. What effect it would have on back-seat drivers is more highly speculative.

We think the case should have gone to the jury without the binding effect of Instruction No. 12. On retrial the applicable law should be presented to the jury as concisely as the circumstances permit.

The judgment is reversed and the cause is remanded for another trial.