**A. A. INGERSOLL, Plaintiff,**

v.

**James MASON and Martha Mason, Defendants,**

**Frankie Lene Rachal, Intervenor.**

Civ. A. No. 624.

United States District Court
W. D. Arkansas,
Texarkana Division.

Aug. 21, 1957.

Shaver, Tackett & Jones, Texarkana, Ark., Boyd Tackett, Texarkana, Ark., for plaintiff.

Scheffres, Allen & Hodes, Seymour Scheffres, Chicago, Ill., Dennis K. Williams, Texarkana, Ark., for defendants and intervenor.

LEMLEY, Chief Judge.

This personal injury action, which was submitted to the jury on interrogatories pursuant to Rule 49(a), Fed.Rules Civ. Proc., 28 U.S.C.A., is now before the Court upon certain post-trial motions filed by the respective parties after the jury returned its answers to the interrogatories propounded to it. Upon the jury's answers being read in open court, it was at once apparent that they raised certain legal questions as to the ultimate rights of the parties, and the Court prior to attempting to render judgment requested counsel on both sides to file motions for the entry of what each considered to be an appropriate judgment, and to accompany their motions with memorandum briefs, with each side being given an opportunity to file a reply brief. Such motions have now been filed and briefed, and the case is ready for final disposition.[1]

The accident out of which this litigation arose took place about 4:25 P.M. on December 26, 1954 at a point on U. S. Highway No. 67 a short distance north of the City of Prescott, Nevada County, Arkansas, and opposite a salvage yard located on the east side of the highway operated by the plaintiff. Immediately prior to the accident the plaintiff, a citizen of Arkansas, accompanied by his father, O. T. Ingersoll, had been proceeding in plaintiff's pick-up truck south along the highway, and as they approached the salvage yard, the plaintiff undertook to make a left-hand turn across the highway to enter a driveway leading to his place of business. At the same time the defendants, James Mason and Martha Mason, his wife, and her niece, the intervenor, Frankie Lene Rachal, all citizens of Illinois, were proceeding north along the highway in a 1954 model Dodge automobile being operated by James Mason, and the collision occurred before the plaintiff had completed his turning movement.

It was the theory of the plaintiff that he was operating his pick-up truck with ordinary care, that he had commenced his turning movement and had crossed the northbound traffic lane, and had gone onto the east shoulder of the highway and was proceeding south along the shoulder preparatory to turning into the driveway when the Mason car came around a curve at an excessive rate of speed, ran off of the main traveled portion of the highway and onto the shoulder and struck his pick-up truck. He charged that the driver of the Mason car was guilty of negligence in failing to keep a proper lookout, in driving at an excessive rate of speed, and in failing to maintain proper control. He further alleged that the car was jointly owned by James and Martha Mason, and that the latter was driving under the supervision of her husband, that they were engaged on a joint enterprise, and that the alleged negligence of Martha Mason was imputed to her husband. At the commencement of the trial, however, the plaintiff conceded that the car was being operated by James Mason, but he insisted upon his contentions that the car was

1. The plaintiff filed a single motion for a judgment dismissing the defendants' counterclaim, together with a supporting brief, and waived the privilege of filing a reply brief. The defendants and intervenor filed four motions: 1. A motion for leave to amend the counterclaim. 2. A motion under Rule 58, F.R.C.P., for a judgment dismissing the complaint. 3. A motion for a directed verdict on the plaintiff's complaint. 4. A motion for an affirmative judgment on their counterclaim and intervention.

jointly owned by the Masons and that they were on a joint enterprise so that the alleged negligence of the driver would be imputed to his wife, and he advanced the further contention that James Mason was operating the car as his wife's agent.

In their pleadings and throughout the trial, the Masons consistently took the position that the car was being operated by James Mason; and they denied that he was guilty of any negligence, or that his negligence was imputed to Martha Mason upon any theory of joint enterprise or agency. By way of counterclaim the Masons asserted that their alleged injuries and damage were proximately caused by the negligence of the plaintiff in undertaking to make a left-hand turn when it was not safe to do so and without giving a proper turning signal, and in operating his pick-up truck while intoxicated. In that connection they contended that as the Mason car approached the Ingersoll pick-up truck which was obscured from their view by another vehicle proceeding ahead of him in the same direction, he suddenly and without warning turned his vehicle across the center line of the highway directly into the path of the Mason car, and that the collision occurred, not on the shoulder of the road, but in their portion of the paved surface of the highway. In their counterclaim they asked for compensatory damages and also prayed for punitive damages on the theory that the alleged negligence of Ingersoll was willful and wanton. The intervenor, Frankie Lene Rachal, adopted the allegations of the counterclaim and likewise sought both compensatory and punitive damages. By appropriate responsive pleadings addressed to the counterclaim and intervention the plaintiff denied that any of his adversaries was entitled to any recovery whatever.

After the evidence had been concluded and after the case had been argued, the case was submitted to the jury upon six interrogatories, which, together with the jury's answers thereto, are set forth in Appendix "A" to this opinion. As will be noted from its answers to the interrogatories, the jury found that both the plaintiff and James Mason were guilty of negligence which proximately caused or contributed to the accident, that the Mason car was owned exclusively by James Mason, but that Martha Mason had with him an equal right of control with respect to the operation thereof, that all of the parties had sustained actual damages, and that Martha Mason was "entitled to an award" of punitive damages in the sum of $5,000.[2]

■ As is usual in cases of this kind, the evidence as to how the accident occurred and as to who was to blame was sharply conflicting, and we are satisfied that the jury's findings that the accident was proximately caused by the joint and concurrent negligence of the plaintiff and of James Mason were amply supported by the evidence. As a matter of fact, neither side appears to quarrel seriously with those findings; nor does either side question the amounts of actual damages found by the jury, which amounts were conservative, or the *amount* of punitive damages found with respect to Martha Mason, although the plaintiff does urgently contend that the finding of such damages has no substantial evidentiary basis.

■ In his motion the plaintiff takes the position that the contributory negligence of James Mason bars him from recovery herein,[3] and further that such

2. While the phrase "entitled to an award of punitive damage" was used in the interrogatory, it is not to be understood that the jury returned any general verdict for any of the parties. Actually, what the jury was called upon to determine, among other things, was whether or not this was a proper case for punitive damages in favor of either of the defendants or of the intervenor, assuming that liability on the part of Ingersoll existed.

3. Since the accident here involved took place prior to the passage of Act 191 of 1955, Ark.Stats., Section 27–1742.1, the plaintiff is right in this contention unless James Mason is correct in his ar-

negligence on his part was imputed to his wife on the theories of joint enterprise and agency which have been mentioned, and bars her from any recovery of either actual or punitive damages. In addition to the foregoing, the plaintiff now advances for the first time the contention that Martha Mason was herself guilty of independent contributory negligence in failing to keep a lookout and in failing to cause the Mason car to be so operated as to avoid the collision. The plaintiff does not ask for any affirmative judgment in his favor, nor does he challenge the right of Frankie Lene Rachal to have judgment for the small amount of actual damage found to have been sustained by her; he simply asks that the counterclaim of the Masons be dismissed in its entirety.[4]

In their motion for judgment the counterclaimants and intervenor pray that judgment be entered for them for the compensatory damages found by the jury, and that Martha Mason have judgment in addition for the punitive damages so found. In support of their motion these parties, in addition to contending that the contributory negligence of James Mason was not imputed to his wife and that she was free from independent contributory negligence, urge that the finding of the jury that Martha Mason was entitled to punitive damages necessarily implied the finding that the conduct of the plaintiff was wanton and reckless, and that such being the case the contributory negligence of James Mason or of Martha Mason would not constitute a defense available to the plaintiff. The validity of that contention is, of course, challenged by the plaintiff.

In passing upon the conflicting contentions just outlined it is necessary to keep in mind that this is a diversity case, and that the governing law is that of Arkansas; and, further, that the evidence in the case must be viewed in the light most favorable to the answers returned by the jury to the several interrogatories.

■ Taking up first the question of punitive damages, counsel did not object at the trial to the propounding of Interrogatory No. 6, and without stopping to analyze the conflicting testimony, it may be said that there was substantial, if not overwhelming evidence to the effect that at the time of the accident the plaintiff was operating his pick-up while in a seriously intoxicated condition, and under Arkansas law such evidence is sufficient to justify an award of punitive damages. Miller v. Blanton, 213 Ark. 246, 210 S.W.2d 293, 3 A.L.R.2d 203; Hall v. Young, 218 Ark. 348, 236 S.W.2d 431, 20 A.L.R.2d 1207.

In Miller v. Blanton, supra, the Court held that punitive damages may be inflicted even though the defendant did not intentionally harm the plaintiff if the former's conduct was characterized by a wanton disregard of the rights and safety of others, and that evidence of intoxication was sufficient to take the question of punitive damages to the jury. In that connection it was said: "When Miller imbibed alcoholic liquor he knew that he was taking into his stomach a substance that would stupefy his senses, retard his muscular and nervous reaction, and impair, if not destroy, the perfect co-ordination of eye, brain and muscles that is essential to safe driving. After Miller voluntarily rendered himself unfit to operate a car properly he undertook to drive his automobile, a potentially lethal machine, down a well traveled highway. His conduct in doing this was distinctly anti-social, and the jury was amply authorized in saying by

---

gument, presently to be discussed, that the quality of plaintiff's misconduct renders the defense of contributory negligence unavailable to him. Conversely, the negligence of the plaintiff himself precludes him from recovery, and he does not contend otherwise.

4. As far as Frankie Lene Rachal is concerned, it was never contended by the plaintiff that she was guilty of any negligence or that the negligence of the driver of the Mason car was imputed to her.

their verdict that he was exhibiting a 'wanton disregard of the rights and safety of others.' " 213 Ark. at page 249, 210 S.W.2d at page 294. And in Hall v. Young, supra, the Court stated: "We will not attempt to detail the testimony. It is sufficient to say that the jury was warranted in concluding that the collision was the proximate result of appellant's gross and wanton negligence in operating his car on a rainy night over the narrow, slippery road at an excessive speed while intoxicated. Under our holding in the recent case of Miller v. Blanton * * * the evidence, when viewed in the light most favorable to appellee, was sufficient to sustain the verdict for both compensatory and punitive damages." 218 Ark. at page 349, 236 S.W.2d at page 432.

Furthermore, in cases arising under the Arkansas automobile guest statutes (Acts 61 and 179 of 1935, Ark.Stats. §§ 75–913 and 75–915), which provide in substance that the owner or operator of an automobile shall not be liable to a gratuitous guest for injuries received by him unless the vehicle was being "willfully and wantonly operated in disregard of the rights of the others," or unless the operator was guilty of "wilful misconduct," it has been held that the conduct which will impose liability under those statutes is essentially the same in quality as that which will render a person liable for punitive damages. Steward v. Thomas, 222 Ark. 849, 262 S. W.2d 901; see also Froman v. J. R. Kelley Stave & Heading Co., 196 Ark. 808, 120 S.W.2d 164; and Cooper v.

Calico, 214 Ark. 853, 218 S.W.2d 723. And in the case last cited it was held that evidence of intoxication on the part of a driver is sufficient to take to the jury the question of his liability to a guest since the jury "might reasonably say that an operator so situated intentionally satisfied his appetite at the expense of physical coordination, hence there was constructive intent to do the things that would naturally flow from intoxication." 214 Ark. at pages 858–859, 218 S.W.2d at page 726.

While we agree with the Masons that the question of punitive damages was properly submitted to the jury, and that its finding that Martha Mason was entitled to such damages was supported by the evidence,[5] and while we also agree with them that this finding necessarily stigmatized the plaintiff's conduct as having been wanton and reckless,[6] we are unable to agree with them in their contention that such finding renders immaterial the contributory negligence of James Mason or that of Martha Mason, if it exists.

Although there is authority to the effect that where the conduct of the party sought to be charged is wanton and reckless, contributory negligence on the part of the person injured is not a defense, there is also authority the other way;[7] and from our consideration of the Arkansas authorities we are satisfied that this State must be aligned with those taking the latter view, and that under Arkansas law, as it existed at the time of the Ingersoll-Mason collision, con-

---

5. It is immaterial that the jury did not find punitive damages in favor of James Mason and Frankie Lene Rachal, since the award of such damages rests within the discretion of the jury even where the facts indispensable to such an award have been established, and the jury in this case was specifically so instructed.

6. In that connection the jury was charged: "Neligence, no matter how gross, is never alone a ground for assessing punitive damages; before punitive damages may be awarded against a party it must appear from a preponderance of the evidence that the negligent party knew or

had reason to believe that his act of negligence was about to inflict injury, and that he continued in his course of conduct with a conscious indifference to the consequences thereof * * *." There was no objection to this instruction, which was drawn largely from St. Louis, I. M. & S. Ry. Co. v. Dysart, 89 Ark. 261, 116 S.W. 224, and it told the jury, in effect, that no punitive damages could be awarded unless wanton and reckless misconduct was established.

7. See 38 Am.Jur. "Negligence," Section 178, pp. 854–856, and authorities there cited.

tributory negligence was a defense in all cases, except those in which the injury was intentionally inflicted or those arising under the doctrine of "discovered peril," which latter doctrine was not involved in this case.

In the early case of St. Louis, I. M. & S. Ry. Co. v. Freeman, 36 Ark. 41, it was said: "Further, it is a plain principle of law that no * * * person, can be held liable for negligence, where the plaintiff, by his own negligence, has contributed to the injury, unless it was a willful injury, or one resulting from the want of ordinary care on the part of the defendant to avert it, after the negligence of the plaintiff has been discovered." 36 Ark. at page 46. While no issue of punitive damages was presented in that case, there was such an issue in St. Louis, I. M. & S. Ry. Co. v. Stamps, 84 Ark. 241, 104 S.W. 1114, in which case an award of punitive damages was affirmed both upon original consideration and upon re-hearing. In that case one of the defenses tendered by the defendant was that the plaintiff had been guilty of contributory negligence, and the trial court gave two instructions which told the jury that if contributory negligence were found, its verdict must be for the defendant. Those instructions are set forth in the footnotes to the Supreme Court's original opinion, and it was held that the issue had been properly submitted to the jury. In connection with that decision it should be pointed out that in its opinion on rehearing the Court said that the case had been given "unusual attention" both upon its first consideration and upon rehearing. Had the Court felt that contributory negligence was not a defense in an action where an award of punitive damages was appropriate, it would seem that it would have said so in one of its opinions, particularly in view of the attention it had given to the case.

Further, as has already been pointed out, a parallel exists between the type of conduct which will justify an award of punitive damages and that which will impose liability under the guest statutes; and in two very recent cases arising under those statutes contributory negligence has been held to be a defense. Scott v. Shairrick, 225 Ark. 59, 279 S. W.2d 39; Haag v. Morgan, 225 Ark. 664, 284 S.W.2d 866.

■ In the light of those authorities we are convinced that under Arkansas law one cannot escape the consequences of his own contributory negligence merely by showing that the conduct of his adversary was wanton and reckless but falling short of intentional wrongdoing. While there was ample evidence in this case to justify a finding of wantonness and recklessness on Ingersoll's part, that is to say that he acted with a conscious disregard of foreseeable injurious consequences, there was no evidence at all tending to show that he willfully or intentionally ran into the Mason car; and, as a matter of fact, the purpose of the defendants' and intervenor's motion to amend the counterclaim is to delete therefrom the allegation that the conduct of Ingersoll was "willful" and to substitute an allegation that it was "wanton."

It is true that in cases involving punitive damages and in cases arising under the guest statutes the Supreme Court of Arkansas has spoken of wanton and reckless misconduct as being the "equivalent" of intentional wrongdoing, St. Louis, I. M. & S. Ry. Co. v. Dysart, supra; Hodges v. Smith, 175 Ark. 101, 298 S.W. 1023; Froman v. J. R. Kelley Stave & Heading Co., supra; and Steward v. Thomas, supra. It is one thing, however, to say that wanton and reckless conduct is the equivalent of intentional wrong for the purpose of allowing punitive damages to an innocent party, or for the purpose of charging the operator of a motor vehicle with liability for injuries sustained by his guest, while it is quite another thing to equate conduct that is merely wanton and reckless with intentional wrongdoing so as to free an injured party from the consequences of his own negligence, and it does not appear that the Arkansas Court is willing to do so.

■ From what has been said it follows that James Mason's contributory negligence bars him from recovery herein, and it now becomes necessary to consider whether such negligence on his part was imputed to his wife either on the theory of joint enterprise or that of agency, and, if not, then whether, or not she was guilty of independent contributory negligence. Should either of those questions be answered in the affirmative, then she cannot recover either compensatory or punitive damages.

When the issue of imputed negligence is considered, it is at once apparent that it hinges upon the question of Martha Mason's right to control or to share in the control of the operation of the Mason automobile. This is true because while "joint enterprise" and "agency" may be said to be separate theories, they are closely related, and before either can be established, it must be shown that Martha Mason had some right to control her husband in the management of the car. In that connection in Lockhart v. Ross, 191 Ark. 743, 87 S.W.2d 73, and in Stockton v. Baker, 213 Ark. 918, 213 S.W.2d 896, it was held that before a joint enterprise between one person driving a car and another person riding therein can be established, it must be shown not only that there was a community of interest in the object and purpose of the trip but also that there was an equal right on the part of the driver and his companion to direct and govern the movements and conduct of each other with respect thereto; and in Watt v. United States, D.C.Ark, 123 F.Supp. 906, 914–917, this court held that where an agency relationship or the doctrine of respondeat superior is relied upon to impute the negligence of the husband-driver to the wife riding in the car, it must be shown that the latter had a right to direct and control the former in the management of the vehicle. In the instant case, while the jury found that Martha Mason had an equal right with her husband to control the car, it was contended on her behalf at the trial and is now contended that there was no substantial evidence to justify the submission of that issue to the jury. We agree.[8]

■ On the question of control the undisputed evidence was to the effect that the accident occurred on the return portion of a round trip of the Masons and Frankie Lene Rachal from Chicago to North Louisiana, which trip was undertaken to enable Martha Mason to visit her sister, and Frankie Lene Rachal to visit her mother,[9] and that James Mason did all of the driving, both on the trip down from Chicago and on the return trip up to the time of the accident. While the testimony of James Mason and Martha Mason was in conflict as to ownership of the car, he asserting that it was his individual property and she stating that the vehicle belonged to both of them, the jury found, and we think justifiably, that the car was his sole property. There was no direct evidence whatever tending to show that Martha Mason exercised or had any right to exercise any control over her husband in connection with his driving of the car. Such being the case, the jury's finding that such right of control existed must have been based on inference, and in view of the finding that the car was owned by James Mason exclusively, the inference must have been founded upon the mere fact that she was riding with her husband in his car on a visit to her people and those of her niece. We do not think that from a legal standpoint those naked facts are sufficient to sustain the inference, particularly when it is kept in mind that on this issue the burden was upon the plaintiff to establish imputed negligence by a preponderance of the evidence. Jones Truck Lines v. Argo, 8 Cir., 237 F.2d 649, 652.

---

8. When counsel objected at the trial to the submission of Part "b" of Interrogatory No. 3, supra, we reserved our ruling on said objection.

9. The evidence as to the nature of the trip was undisputed and for that reason was not made the subject of any interrogatory.

In the fairly recent case of Rogers v. Crawford, 220 Ark. 385, 247 S.W.2d 1005, the Court cited with approval Silsby v. Hinchey, Mo.App., 107 S.W.2d 812, wherein it was held that as a general proposition a wife riding in her husband's car is simply deemed to be his guest, and that his negligence is not imputable to her since she lacks the right to control his actions, the reason for the rule being that he is in no sense of the law her agent or servant. After referring to that case the Supreme Court went on to say: "In the application of Silsby v. Hinchey to the case at bar it should be emphasized that under our decisions agency is not to be presumed from the relationship of husband and wife." 220 Ark. at page 395, 247 S.W.2d at page 1011. And in 5A Am.Jur. "Automobiles and Highway Traffic," Section 817, page 761, it said that, "Agency does not arise simply by showing a family relationship; there must be additional proof."

Here, the only "additional proof" was that the trip was for a purpose that we shall assume for purposes of argument was at least primarily that of Martha Mason, but we do not think that such added fact was sufficient to take the question of control to the jury. In Lockhart v. Ross, supra, the facts were that the defendant, Lockhart, had driven his own car from Kilgore, Texas to Hot Springs, Arkansas, for the sole purpose of bringing his mother, the defendant, Mrs. Nellie Jobe, back to Kilgore from a visit at Hot Springs; an accident occurred on the return trip, and the jury found against both Lockhart and his mother. The Supreme Court reversed the judgment against Mrs. Jobe and dismissed the case as to her on the ground that there was no substantial evidence upon which a finding of imputed negligence could be based. It was said: "Lockhart is a man forty-five years of age and owned the automobile. There is a total want of evidence to show that Nellie Jobe had any control over the use of the automobile at the beginning of the journey, or as it progressed, or that she

had equal authority with the driver to prescribe the conditions of its use. There is no conflict in the evidence in this regard and no question of fact to submit to the jury." 191 Ark. at page 749, 87 S.W.2d at page 76. While the plaintiff in that case was relying on "joint enterprise" as a basis of recovery against Mrs. Jobe rather than on "agency," we do not deem that to be material since, as we have pointed out, a right of control must be shown in order to impute negligence under either theory.

The instant case is readily distinguishable from Watt v. United States, supra, wherein we found that the contributory negligence of a husband was imputed to his wife. In that case the husband was driving the wife's car on her mission, and we found as a fact that he was subject to her control in the management of the car. Had the situation in the Watt case been that which is presented here, the decision would have gone the other way.

■ The question of the right of a person riding in the car to control the driver in the operation thereof was elaborately discussed by the Supreme Court of Utah in Fox v. Lavender, 89 Utah 115, 56 P.2d 1049, 109 A.L.R. 105. In the course of its opinion the Court stated that where, as here, "there is a paucity of facts from which any inference as to agency or the lack of it can be had, solution may depend entirely upon presumptions," and that "these presumptions may, in many cases, not only serve to relieve the plaintiff of the duty of presenting evidence tending to show agency but may have the effect of substantive law." 89 Utah at page 121, 56 P.2d at page 1052, 109 A.L.R. at page 109. The Court discussed the various presumptions that might arise, and stated that no presumption arises that a husband driving his own car is his wife's agent or subject to her control in the operation of the car merely because she is present therein and it is being driven on a mission of hers. So here, no presumption arises in favor of the plaintiff based upon the relationship between the Ma-

sons or upon the fact that she was riding in his car which was being driven for the purpose that has been stated. The plaintiff has simply failed to make a jury case on the issue of control.

As a matter of fact, although we do not consider Rogers v. Crawford, supra, as being directly in point, the opinion therein does indicate that the Supreme Court of Arkansas views with disfavor attempts to impute to the wife the negligence of her husband in the operation of his own car, and that it will sustain such imputation only in cases involving special circumstances not present here.

■ The plaintiff argues that because Martha Mason signed the finance papers on the car along with her husband she became the "equitable owner" of an undivided one-half interest in the vehicle, and that a joint right of control stemmed from such ownership. There is no merit in that contention. As stated, the burden of proving imputed negligence is upon the plaintiff, and he has not shown that the nature of the "finance papers" signed by Martha Mason was such as to give her any title to the vehicle, either legal or equitable, or any right, legal or equitable, to control the operation of the same; she does not claim to have made any payments on the car, and the jury found that it was not jointly owned. That one may be a co-signer of a note or chattel mortgage covering a motor vehicle does not of itself establish that such co-signer has any legal or equitable title to such vehicle or any right to control its operation.

Having concluded that there was no substantial evidence justifying the submission to the jury the question of Martha Mason's right to control the operation of the car, or to sustain the jury's answer to that question, it follows that such answer must be disregarded and that plaintiff's contention that the contributory negligence of James Mason was imputed to his wife must be rejected.

■ With regard to the alleged independent contributory negligence of Martha Mason, no interrogatory bearing upon that issue was submitted to the jury, and none was requested. Hence, under the provisions of Rule 49(a) it becomes the duty of the Court, sitting as a trier of fact, to make a finding with regard to this particular contention, and in passing thereon it must be kept in mind that we have determined that she was simply a passenger in her husband's car without any right of control with respect to its operation, see Arkansas Valley Cooperative Rural Electric Co. v. Elkins, 200 Ark. 883, 890, 141 S.W.2d 538. And it must also be remembered that the burden of establishing contributory negligence on the part of Martha Mason by a preponderance of the evidence rests upon the plaintiff, unless its existence is established by her own evidence.

■ The plaintiff introduced no evidence tending to show that Martha Mason failed to use ordinary care for her own safety while riding in her husband's car, and the only basis for a possible finding of such a failure would be the testimony of the defendants and intervenor. All three of these people testified that James Mason was driving the car, that Martha Mason was sitting on the right-hand side of the vehicle, and that Frankie Lene Rachal was sitting in the middle of the front seat; all of them also testified that James Mason was operating the car in a careful and prudent manner. Martha Mason testified that during most of the trip she was watching the scenery, and that immediately prior to the collision she had turned to the rear of the vehicle to select a sandwich from a supply that had been prepared prior to the commencement of the journey. We cannot say from that testimony that Martha Mason was guilty of any lack of ordinary care for her own safety which directly and proximately contributed to her injury, and, therefore, we find that she was not guilty of contributory negligence.

■ This accident happened in a matter of seconds, and, as stated, at a time when Martha Mason had turned

around to get a sandwich out of the back seat, and we do not think it negligent in a passenger in the course of a long trip to so turn around for such a purpose. It is true that the jury found, on sharply conflicting evidence, that James Mason was negligent, but we cannot say from the evidence that his negligence was or should have been appreciated by his wife, or was of such a nature that she, as a reasonably prudent passenger, should have warned or protested against it. To charge her with contributory negligence on the ground that she knew, or should have known that her husband was negligent, and that she should have remonstrated with him, and that had she done so, the accident would have been avoided would be to indulge in pure speculation or conjecture, which should not be done.

We have already referred to the motion of the defendants for leave to amend their counterclaim so as to describe the conduct of plaintiff as "wanton" rather than "willful," and the plaintiff has conceded that the granting of said motion rests within our discretion. Without stopping to discuss whether or not there is any real necessity, from the defendants' standpoint, for the amendment, we will state that there was no evidence that the plaintiff's actions sprang from a willful intent to do injury, while there was abundant evidence that his conduct was "wanton," and that motion will be granted.

Let a judgment be entered dismissing the complaint of the plaintiff and the counterclaim of James Mason with prejudice, and awarding to Martha Mason her compensatory and punitive damages, and to Frankie Lene Rachal her compensatory damages. All costs to be adjudged against the plaintiff.

### Appendix "A"

"Interrogatory No. 1. Do you find from a preponderance of the evidence that James Mason was guilty of negligence in any one or more of the respects relied upon by the plaintiff, and that such negligence on his part, if any, proxi-mately caused or contributed to the plaintiff's alleged injuries and damage? Answer: *Yes*."

"Interrogatory No. 2. Do you find from a preponderance of the evidence that A. A. Ingersoll was guilty of negligence in any one or more of the respects relied upon by the defendants and intervenor, and that such negligence on his part, if any, proximately caused or contributed to the alleged injuries and damages of the defendants and intervenor? Answer: *Yes*."

"Interrogatory No. 3. If your answer to Interrogatory No. 1 is 'Yes', then: a. Do you find from a preponderance of the evidence that the Mason car was jointly owned by James Mason and Martha Mason? Answer: *No*. b. Do you find from a preponderance of the evidence that James Mason and Martha Mason each had an equal right to direct and govern the movements and conduct of each other with respect to the operation of said car at the time of the accident involved in this case? Answer: *Yes*"

"Interrogatory No. 4. If your answer to Interrogatory No. 1 is 'Yes,' then, without regard to your answer or answers to any other interrogatory or interrogatories, name the sum of money which the evidence shows will fairly and reasonably compensate the plaintiff, A. A. Ingersoll, for the injuries and damages, if any, sustained by him as a result of the accident involved in this case. Answer: *$1940.00*

"Interrogatory No. 5. If your answer to Interrogatory No. 2 is 'Yes,' then, without regard to your answer or answers to any other interrogatory or interrogatories, name the sums of money which the evidence shows will fairly and reasonably compensate the defendants and intervenor respectively for the injuries and damages, if any, sustained by them as a result of the accident involved in this case. Answer: *James Mason $1752.90. Martha Mason $3916.-25. Frankie Lene Rachal $100.00.*"

"Interrogatory No. 6. If your answer to Interrogatory No. 2 is 'Yes,' then state

separately with respect to each of the defendants and the intervenor whether or not you find from a preponderance of the evidence that such defendant or intervenor is entitled to an award of punitive damages, and, if so, then name the sum of money which you find from a preponderance of the evidence should be awarded to such defendant or intervenor as punitive damages. Answer: *James Mason, No. Martha Mason, Yes—$5,000.00. Frankie Lene Rachal, No."*